THE W. T. RAWLEIGH CO. *v.* WILKES.

4-5230                                                    121 S. W. 2d 886

Opinion delivered November 7, 1938.

*Williams & Williams* and *Ingram & Moher,* for appellant.

*Woolsey & McKenzie,* for appellee.

MEHAFFY, J.   The appellant entered into a contract with appellee, James A. Wilkes, under which Wilkes purchased merchandise on a credit during 1932.   When

the contract expired Wilkes owed appellant on January 1, 1933, $452.39. They then entered into a renewal contract. Appellees, E. H. McKay and Garland Hamm, entered into a contract with appellant as sureties for Wilkes. The contract was terminated during the month of May, 1933, at which time Wilkes owed appellant a balance of $449.17.

Under the contract, the appellant agreed to sell quantities of its products to Wilkes at the current wholesale prices and on time. Wilkes agreed to pay for the products and to pay the balance due when the renewal contract was entered into. McKay and Hamm signed a bond making themselves jointly and severally liable for any and all goods, wares and merchandise sold to the buyer under the contract entered into between appellant and Wilkes. The contract is quite long, and it would serve no useful purpose to set it out in full.

The appellant sent Wilkes a form which specified the territory as Marion county, Arkansas, and tributary territory was described as that part of Marion county south of the Missouri Pacific Railroad, including all towns having a population of less than 300. In this same instrument there was mentioned the amount of business expected, and was signed by Wilkes.

After the contract had been entered into and after it had been signed by the sureties, the appellant wrote a letter to Mr. Dennis W. James which is as follows:

"Memphis, Tenn.,
"March 20, 1933.
"In reply refer to—

"Mr. Dennis W. James,
"Route No. 2,
"Harrison, Ark.
"Dear sir:

"The investigation of your contract has been completed, and we are pleased to notify you of our acceptance. Enclosed you will find:

"Bulletin 665 'Notice of Accepted Contract.'

"Form R. 2034 'Letter enclosing first order, advance payment, etc.'.

"According to your application you prefer South Marion county. That locality is still available. We sent you a sales estimate on March 13. Rawleigh Products have been sold there for a long time, and the locality offers a good opportunity for the right man to build up a successful business.

"This is an ideal time of the year to get your business started, so we will depend upon you to order your products and supplies at once. The enclosed suggested order will show you the stock of products you will need with which to start properly. You can make a good saving on your first shipment by using the special orders for insecticides and tonics and alteratives.

"Expecting to receive your first order for products and supplies in an early mail, we remain,

            "Yours truly,
            "The W. T. Rawleigh Company
            "By B. L. Knober.
"BLK/L."

On September 5, 1934, the appellant brought this suit in the Franklin circuit court against the appellees, J. H. Wilkes, E. H. McKay and Garland Hamm, alleging the contract with Wilkes, and that McKay and Hamm became sureties for Wilkes. It asked judgment against Wilkes and his sureties, McKay and Hamm, in the sum of $449.17.

A copy of the contract was attached to the complaint as an exhibit, and also affidavit of J. R. Jackson, secretary of appellant company. There was also filed with the complaint the account with Wilkes, showing debits and credits and balance due.

The appellees filed answer denying the material allegations in the complaint, and alleging that, before the appellant would approve the contract, it required Wilkes to select territory within which to sell Rawleigh products, and that the appellee, Wilkes, selected all that part of Marion county, Arkansas, south of the Missouri Pacific Railroad, etc., and that appellant in a separate and subsequent contract, appointed Wilkes as its dealer in all of said territory with the exclusive right of selling

goods in said territory; that appellant breached its contract to the damage of Wilkes in the sum of $800, and asked for judgment for said sum.

On application of appellant, the court made an order to take the deposition of J. R. Jackson by interrogatories. Notice was served on appellees and Jackson's deposition was taken.

There was a trial by jury, and the following verdict was rendered: "We, the jury, find for the defendant, Jim Wilkes, damages to the court of $449.17, and on the whole case we find for the defendant." The verdict was signed by the foreman of the jury.

The case is here on appeal.

The contracts and letter above referred to were introduced in evidence. Wilkes testified in substance that when he signed the contract the appellant required him to select the locality and sign its statement showing the territory that he was to sell in, and that it would not accept the proposition until he did this. This letter, designating the locality was a part of the contract.

"The principal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles." 6 R. C. L. 835.

When different instruments are executed at the same time, but are all parts of one transaction, it is the duty of the court to suppose such a priority in the execution of them as shall best effect the intention of the parties. The general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance. 6 R. C. L. 850, 851.

The evidence in this case shows that the contract was sent to the appellant, signed by the appellee, Wilkes, and that the appellant declined and refused to accept it until they received a signed statement by him indicating the locality where he would sell the goods. It is true

that the secretary of the appellant company says that this was simply for the purpose of advising the company where the buyer intended to sell the products; but he also testifies that they would not give one buyer a locality that was already occupied by another buyer of appellant. There can be no question, but that the two instruments constitute one contract, and are binding on both parties.

This court has many times held that in ascertaining the intention of the contracting parties, courts may acquaint themselves with the persons and circumstances mentioned in the contract, and may place themselves in parties' situation. In this case the appellant was the manufacturer and seller of many products. It made contracts not only all over this country, but other countries. One witness testified that it was the biggest concern of its kind in the world. It was constantly making contracts of this kind. It prepared the contracts itself, and the other party must either sign the contract prepared by it, or no contract would be made. This is not only true of what they call the contract, but it is also true of the letter designating the locality. Courts have always construed contracts most strongly against the party that prepared them. On the other hand, there was this farmer, Wilkes, who had nothing to do with making of the contract, was not accustomed to business of this sort, and certainly would not have made a contract and given security for its performance if some other person were given the same territory in which to sell the same products.

The contract made between appellant and Wilkes was accepted January 3, 1933. Wilkes testified, and this is not disputed, that he signed the contract before Mr. Stewart, did, and when he signed it returned it to the company. He had no acceptance of the contract at that time, but it had the signature of both McKay and Hamm. He also testified that the company sent to him a contract to select his territory, and required him to sign that. Before the company would approve his contract, it required him to select the territory in which he

would sell the products. He signed said agreement, and mailed it to the company. While he did not have a copy of this particular contract, he did have a copy of the one signed in 1932, which was a similar document. The statement selecting territory in 1932 is the same as the contract made in 1933, except as to dates. That instrument shows that the territory selected was Marion county, Arkansas.

On March 20, 1933, after Wilkes had signed the contract on January 3, 1933, the company wrote to Mr. Dennis W. James a letter in which was stated: "According to your application you prefer south Marion county. That locality is still available. We sent you a sales estimate on March 13. Rawleigh Products have been sold there a long time, and the locality offers a good opportunity for the right man to build up a successful business."

When it said the locality was available, it necessarily meant that it could be assigned to James. Wilkes testified that James came into the territory occupied by Wilkes. He testified that the territory designated in the letter introduced, which had been written to James, described the same territory that had been selected by him, and that thereafter James sold Rawleigh Products in that territory. Witness had been selling Rawleigh Products under his contract in that territory. He testified that, after Mr. James had received the above letter, he moved there for the purpose of selling Rawleigh Products, and that Mr. James' selling products in that territory effected his business, so that he could not collect what he had out, and it naturally cut his sales; that the population south of the railroad in Marion county is 7,000 or 8,000. Wilkes testified that he lost $800, because Mr. James came in there and set up his business. Wilkes did not dispute the indebtedness to the company, but claimed that the company, in breaching its contract and permitting another person to sell in that territory, damaged him in the sum of $800. He claimed that he had an exclusive agency and stated that he had two letters from the Rawleigh Company, and the company manifested displeasure, because he had overstepped his territory.

Mr. J. R. Jackson, secretary of appellant company ever since its incorporation in 1895, testified that he had charge of the books, and that the orders of customers were promptly and properly filled; that Wilkes carried an account under the written contract introduced in evidence. He testified that the terms of the contract between the company and Wilkes had not been altered at any time; that the balance due the company from Wilkes was $449.17, and that the sureties for Wilkes were E. H. McKay and Garland Hamm, and that the amount due by the sureties was the same as that due by Wilkes. This witness testified that at the time Wilkes and appellant entered into the contract the company had a form that is usually sent to their prospective new dealers if he expects to establish his business in a certain locality, but he said this was simply to keep their records so that they could keep track of the localities where the dealer selected to establish his business. Wilkes signed such form. This form is merely advisory and not considered as in any way a part of the contract or binding on any party. The sureties were not supplied with copies of this form. This witness testified that, after the contract was received, it was investigated and accepted, and that the company sold merchandise according to the contract; he presumes Wilkes furnished them with an application to become a Rawleigh dealer. He testified that it was not the policy of the company before approving contracts to require them to select certain territory, but they so advise where they expect to establish their business, so that the company will not go to the trouble of securing another dealer for that locality. He was asked if they did not have in their advertisements "First come, first served," and he said that had been issued in some of their literature. He said the term "available locality" or other similar terms had perhaps been used inadvertently in some of their literature, and he presumes that where the term "available locality" is used, it is intended to mean a locality where, so far as the company knows, there is no regular dealer. He does not remember about the letter to Mr. Dennis W. James and says he does not have

his files, and says if the letter contains a statement "the locality offers a good opportunity for the right man to build up a successful business," he thinks the statement speaks for itself.

We think it clear from the testimony that in this case they did agree on a certain locality and would not accept the contracts until this was determined; these contracts were signed on January 3rd, and in March they gave James the same territory, thereby depriving Wilkes of profits which he would have made if James had not come into the territory. The sureties signed the bond after the first contract was signed and sent to the company, and thereafter the company contracted with James, permitting him to sell in the same territory, and this was such a modification or change of the contract that it released the sureties. It actually appears from the evidence, that the company had a contract with Wilkes in 1932, and at the close of that year he owed the company something over $400. The company immediately set to work to make a new contract, and the sureties undertook not only to see. that Wilkes paid the indebtedness, if any, of 1933, but undertook to assume the indebtedness that was contracted in 1932. Shortly after the company got the bond of the sureties, they communicated with Mr. James telling him that that territory was available.

It would make no difference what Mr. Jackson or his company thought about their advertising, or whether it was done inadvertently or not, the company would in any event be bound by their conduct.

We think the evidence is ample to sustain the verdict. The appellant, however, complains that the court erred in giving and refusing to give instructions. We do not set out the instructions, but have very carefully considered them, and we are of the opinion that the court did not err in giving or refusing instructions.

We find no error, and the judgment is affirmed.