GOWEN *v.* SULLINS.

4-8396                                                                208 S. W. 2d 450

Opinion delivered February 2, 1948.

Rehearing denied March 8, 1948.

*Ben B. Williamson*, for appellant.

*Caudle & Mobley*, for appellee.

SMITH, J.   On April 14, 1945, appellee, H. E. Sullins, at that time a citizen and resident of Hereford, Texas, negotiated and entered into a contract with one W. C. Branscum, as agent of the United Farm Agency, a corporation engaged in the real estate business, for the purchase of a farm of which C. E. Gowen was the owner.

On the date stated a written contract was prepared by Branscum, as agent, which recited that Gowen had contracted to sell and Sullins had contracted to buy a farm there described as R. E. listing No. 432—164 acres.

Branscum had prepared and circulated literature, copies of which had been received by Sullins, which referred to lands the agency had for sale by number, the land of Gowen being listed as No. 432. The contract recited that the purchase price of the land was $4,400, payable as follows: "Amount paid on execution of the contract, $1,000. Additional cash on delivery of deed, $3,400 . . . and agrees to pay the balance as follows: $500 as soon as abstract and deed is approved." The contract also recites that "It is mutually agreed that should either party hereto fail or neglect to perform his part of this agreement, he shall forthwith pay and forfeit as liquidated damages to the other party, a sum equal to ten per cent of the agreed price of sale, except, that if said agreed price is less than $2,000, said sum shall be $200. Deed shall be delivered on the............day of.................................., 19........, at............o'clock, at the office of................................in the city. of................................as soon as paid in full." Other recitals indicate that a blank form was used in the preparation of the contract.

On the same day and under the same date to-wit, April 19, 1945, Branscum prepared a written contract entitled "Contract and Escrow Agreement." This writing recited that Gowen, as party of the first part, agrees "to sell and execute a warranty deed and abstract to (Sullins) the party of the second part, certain lands described as being in section 14, T. 14 N., R. 11 W., containing 164 acres, for a consideration of $4,400, of which sum $1,200 is being paid down and $500 upon completion of deed and abstract, and the balance to be paid in annual installments of $900 each, with interest at 6% on the unpaid balance beginning with the first installment payment of $900, on or before April 16, 1946, and $900 on April 19 of each year until the full amount of $2,700 is paid in full." It was also recited "that party of the second part, after having read this contract, agrees on his part to make the down payment of $1,200 and $500 and the balance as set out above." And further that "It is understood that the deed and a copy of the contract shall be held in escrow in the bank at Mt. View, to be collected by said bank, and placed to the credit of the

party of the first part, and when all payments have been made said deed to be delivered to the party of the second part.''

It was further recited that ''It is understood that in the event of the failure of the party of the second part to pay either of the installments in the deed when due, all become due and payable, and this contract becomes null and void, and the deed reverts to the grantor at the option of the grantor.'' Other provisions relate to the payment of taxes which we do not recite. It will be observed that the escrow agreement makes no reference to the payment of damages by the party failing to perform.

This suit was brought by Sullins against Gowen and against Branscum, both as agent and individually, to recover the payment made, and for liquidated damages for which the original contract provides, it being alleged that they had breached the contract in the manner hereinafter recited, and at the trial judgment was rendered for those amounts, and from that judgment is this appeal.

We think it clear that the escrow agreement, using that term to distinguish one writing from the other, was not intended to cancel and abrogate the sales contract, although it does modify it as to the time and manner of making payments, and it is not insisted that the provisions in the sales contract referring to the abstract were deleted or annulled. The insistence is that the agreement with reference to the abstract was performed. The court below was of the opinion that the writings having been executed simultaneously, or one immediately following the other, should be read together as being intended to evidence a single contract.

The pleadings and the testimony make it perfectly clear that all parties contemplated and intended that the two writings would make a single contract. It is well settled in this state that in the absence of anything to indicate a contrary intention, instruments executed at the same time for the same purpose, and in the course of the same transactions are, in the eyes of the law, one

instrument and will be read and construed together. *Raleigh Co.* v. *Wilkes,* 197 Ark. 6, 121 S. W. 2d 886; *Daugherty* v. *Merrifield,* 190 Ark. 537, 80 S. W. 2d 72. The court below so construed the writings, and we think correctly so, indeed appellants quote from and rely upon the sales contract in several respects.

Both writings were prepared and executed in Mountain View. Sullins' wife had accompanied him there, and she inspected the property proposed to be sold, along with her husband, and while neither writing reflects the fact, it is agreed that Mrs. Sullins' name, as well as that of her husband, was to be used in buying the land and the deed was to be made to them as tenants by the entirety.

The escrow agreement required that a deposit of $1,200 be made and acknowledged that it had been made, and this money was deposited with the bank as the escrow agent. At the same time a joint deposit in the bank was made in the name of Sullins and his wife, the purpose thereof being to have the money on hand with which to complete the payment required to be made, "upon completion of deed and abstract." Sullins testified that not knowing how much he would be required to pay down, he had brought with him a cashier's check for $1,500, of which $1,000 was paid to Branscum and this with $200 previously paid on another proposed contract, which was never consummated, made the $1,200, the receipt of which was acknowledged in the escrow agreement. That agreement did not require Sullins to make the $500 deposit and he testified that he made it to be used when the contract was closed as he did not wish to carry the money back with him to Texas and it was left with the bank as a joint deposit of himself and his wife. Sullins was only required to pay the $500 when the abstract had been delivered and the title approved.

After the writings had been signed, Mr. Sullins and his wife returned to their home in Texas where they separated, but they became reconciled and their separation was of short duration. But while they were

separated Mrs. Sullins wrote a letter, dated May 19, 1945, to Mr. Branscum reading as follows:

"I am writing you in regard to the place of Mr. C. E. Gowen as I have not heard from you all about the deed and abstracts, don't know if they are o. k. or not, as you all have waited so long, I have changed my mind about the farm, as Mr. Sullins and I have separated, and I can't handle the farm alone if you have any town property on your list, let me know. As soon as I finish selling out here will be up and invest in town property. I drew a draft for $500 on bank there. Answer by return mail."

The court below refused to admit this letter, which was evidently written by Mrs. Sullins while in a "pet," for the reason no doubt that Mr. Sullins, the contracting party, if aware of it, ignored it and insisted upon its completion and tendered performance of it. Sullins testified that his wife had no authority to cancel the contract, and he did not authorize that action.

The $500 to which Mrs. Sullins referred was the deposit of that sum to the joint account of Mr. and Mrs. Sullins, which had not been placed in escrow, and was not required to be, but was subject to the check of either Sullins or his wife. Appellants treat the withdrawal of this deposit as a breach of the contract which absolved them from the obligation to perform. But they had no right to do so, as the $500 was not due to be paid until an abstract of the title had been furnished and approved. Whether this is true is the real question in the case.

Appellants apparently were of the opinion that the withdrawal of the $500 deposit not only absolved them from any obligation to complete the contract, but entitled them to retain the advance payment which had been made. That theory does not appear to be now asserted, but it was of course erroneous as it was held in the case of Osborne v. Fairley, 138 Ark. 432, 211 S. W. 917, that only in the event that the vendor had tendered an abstract of title and deed to the purchaser, and the latter had failed or refused to accept same could the vendor exact his forfeiture of the earnest money. Bran-

scum testified that when the $500 deposit was withdrawn, he paid Gowen $800 of the $1,200 referred to in the escrow agreement.

That an abstract of the title was to be prepared and furnished to Sullins is not disputed. The contract of sale so provides and when Sullins completed the payment of the $1,200, Branscum wrote on the receipt therefor the words, "Subject to approval of deed and abstract."

Sullins and his wife drove to and returned from Mt. View in their automobile, a trip which required eight days. After returning to Texas, Sullins completed the disposition of his holdings in that state, and had the money in hand to complete the contract, which he was willing, able and quite anxious to do, as he had sold his home.

On June 9, 1945, which was of course subsequent to the letter written by Mrs. Sullins, Mr. Sullins wrote the bank a letter reading as follows:

"On April 19th H. E. Sullins of Hereford, Texas, and C. E. Gowens place a real estate contract and money in escrow in your bank. The contract has not been furnished and I do not have the address of Gowens.

"Will you please send the abstract to me for examination, or have Gowen to do the same."

When the abstract was not forwarded as requested, Sullins directed the attorney he had employed to examine the abstract to write the bank about the abstract, and under date of June 23, 1945, the attorney wrote the bank as follows: "Please send the abstract at once. Mr. Sullins is ready to close the deal, but of course wants to know that he gets title to the land." These and certain other letters make certain the fact that Mr. Sullins did not consider the letter from his wife above referred to as having annulled the contract of sale. The president of the bank testified that he advised Branscum and Gowen of the receipt and contents of the letter above quoted.

On July 18th, Gowen wrote Sullins the following letter:

· "After giving you far more than ample time to make up your mind I will still give you until August 1st, 1945, to pay the $500 upon the delivery of the deed and abstract.

"As a matter of fact you killed your contract when you failed to leave the $500 in the bank to take up the abstract when I delivered same, but unless you do so by August 1st, 1945, I will tell Mr. Branscum to sell it again. ·

"So trusting you will see fit to do so at once but positively not later August 1st, 1945."

Even this letter made no offer to furnish Sullins the abstract, but demanded that $500 additional be deposited as a condition upon which the abstract would be delivered.

On July 23d, Sullins' attorney wrote Branscum requesting him to forward the abstract and stated: "If you will send the abstract to Mr. Sullins or to me, the same will be examined at once and if you have a good title, we will close at once."

Altogether Sullins and his attorney wrote nine letters over a period of three months, all demanding that the abstract be furnished. A number of these were registered, and the registry receipts show that they were delivered. The admission of these letters was objected to upon the ground that they were not the original letters, but were admittedly copies, and only one had been written by Sullins himself.

The original letters were not in Sullins possession, but it was shown that all the letters except the one which Sullins personally wrote were typewritten, and copies thereof were offered in evidence: Before the trial, notice was given pursuant to § 5147, Pope's Digest, to produce the original letters, in which notice it was stated that if the original letters were not produced, carbon copies would be offered in evidence. It was objected also that Sullins had written only one of these letters, but he testified that his attorney had written the others at his

direction, and as it is not denied that they were received, the copies were admissible as showing the contents of the originals, to the effect that Sullins wanted only the opportunity of approving the title before proceeding to complete his payments.

As has been said the escrow agreement did not require or contemplate that the abstract should be placed in escrow, along with the contract and deed and the deposit, but the abstract was delivered to the bank some days later. The president of the bank admitted that the bank had received one or more of the letters above referred to, which he had shown to Branscum and Gowen, but he did not forward the abstract to Sullins as he thought he had no authority to do so in the absence of directions to that effect from Branscum or Gowen, which he did not receive.

There was testimony to the effect that when the sales contract and the down payment were deposited with the bank Sullins said he would return in about 30 days and complete the contract, and appellants say they were ready at all times to deliver the abstract upon demand, but Sullins did not appear and make that demand as he was required to do, and had agreed to do.

Appellants say that the only provision in the contract with reference to an abstract was that the $500 payment would be made ''upon completion of the abstract'' and that there was nothing in the contract requiring that the abstract be delivered and approved and that appellee's contention in this respect made an issue of fact for the jury to pass upon, as ''the agreement of sale and the contract are both silent on this point. There is nothing in either requiring appellants to deliver the abstract to the appellee in Texas, and no requirement in either that the abstract was to be examined and approved by an attorney.''

We think it was clear, however, that the entire contract was dependent upon the approval of the title. It is undisputed that the contract called for an abstract, and it is also undisputed that the abstract was never sub-

mitted for an examination notwithstanding the frequent requests for its submission. The correspondence referred to made clear the fact that Sullins did not personally intend to examine the abstract, but had employed an attorney to perform that service, and it appears unreasonable to suppose that it was contemplated or was the duty of Sullins to come from his home in Texas to get the abstract for examination by his attorney in Texas, when a few cents postage would have carried the abstract to appellee through the mail.

The court below ignored this contention in an instruction directing the jury to return a verdict for the amount deposited and for the liquidated damages for which the contract provided. On this issue, the one of fact in this case, the court stated to the jury:

"In entering into this agreement, the plaintiff Sullins had a right to have this abstract delivered to him and to have it examined by an attorney of his selection whether in Arkansas or Texas or any other State; and it was the duty of these defendants when he demanded the abstract, if he did so within a reasonable time, and he did according to the evidence here, to have that abstract mailed down there to his attorney and when he wrote in here for it they should have forwarded this abstract down there so that this man could have this abstract examined."

Certainly the mere preparation of the abstract did not discharge appellants' duty to appellee under the contract, and as the opportunity to examine the abstract was not afforded, the verdict in appellee's favor was properly directed, and the judgment thereon is affirmed.