## UNION COUNTY, Arkansas *v.* UNION COUNTY FAIR ASSOCIATION

82-53                                        633 S.W.2d 17

### Supreme Court of Arkansas
#### Opinion delivered May 17, 1982

*William A. McLean,* for appellant.

*Ian W. Vickery* of *Ian W. Vickery & Associates, P.A.,* for appellee.

ROBERT H. DUDLEY, Justice. The issue in this case is whether the holder of the possibility of reverter after a determinable fee can maintain an action for waste. The Court of Appeals has certified the case to this court as a case

of significant public interest and a case of major importance. Rule 29 (4) (b) Vol. 3A (Repl. 1979).

In early 1961, appellant Union County wanted to build a hospital on a tract of land owned and occupied by appellee Union County Fair Association. On November 15, 1961, after considerable negotiations, the parties entered into an agreement by which the county would pay $57,904.00 to the association for its land. The association would use $8,500.00 of the money to purchase 26 acres from the American Creosoting Corporation for a new fairgrounds. Title to the new fairgrounds would be in appellant Union County, but "it is hereby agreed and covenanted that the . . . Association may use said property so long as a County Fair is held and the said property sights [rights] hereby created shall not forfeit unless no Fair is held for a period of at least two consecutive years." The association agreed to spend "an additional sum of at least $20,000.00 of its money on new buildings for fair purposes." The county agreed to open a street on the south line of the new fairgrounds, to place gravel on an area designated for parking and to provide a covered grandstand with a capacity for seating at least 500 persons.

Simultaneously, the association entered into a contract with T. R. Williamson for the construction of buildings on the soon-to-be acquired fairgrounds. The contracted cost of this construction was $69,404.00. Of this amount, $49,404.00 would come from the money the association would receive from the county for the old fairgrounds, and $20,000.00 would come from the association's separate funds. The county, in an unspecified capacity, also executed the construction contract. In about a month, on December 18, 1961, the American Creosoting Corporation conveyed the new fairgrounds land to Union County for the recited consideration of $8,500.00. The association, in addition to the $8,500.00 purchase price, has now expended $154,894.61 for permanent improvements to the property.

The county now objects to the association's plans to remove the grandstand in order to expand the area for the showing of cattle and hogs. The association filed suit in

chancery court asking a declaratory judgment defining the rights and interests of the parties in the fairgrounds. The county joined in asking that the rights and interests of the parties be declared and also asks that the association be enjoined from removing the grandstand.

The agreement between the county and the association, the agreement between the association and T. R. Williams which was also executed by the county and the deed from American Creosoting Corporation to the county were all executed for the same purpose and as a part of the same transaction. Instruments executed at approximately the same time, for the same purpose, in the same transaction are legally one instrument and will be construed together, in the absence of anything to indicate a contrary intention. *Gowen* v. *Sullins,* 212 Ark. 824, 208 S.W.2d 450 (1948). All of the agreements, when considered as one, express the clear intent of the parties that the association use the property "so long as a County Fair is held and the said property sights [rights] hereby created shall not forfeit unless no Fair is held for a period of at least two years," at which time the property would revert to the county. The instruments vest the association with a determinable fee. A determinable fee is ordinarily created by a provision that the grantee's estate is to continue "as long as" the property is used for a certain purpose or "until" a given event occurs, or by similar words limiting the duration of the estate. *Davis* v. *St. Joe School District of Searcy County,* 225 Ark. 700, 284 S.W.2d 635 (1955). If the limitation occurs, that is, if the association fails to conduct a county fair for two consecutive years, the determinable fee will automatically terminate and pass by reverter to the county. *Williams* v. *Kirby School District No. 32,* 207 Ark. 458, 181 S.W.2d 488 (1944). In the meantime the association's possession of the property puts third persons on notice of its rights in the property. *Clinton School District No. 1* v. *Henley,* 212 Ark. 643, 207 S.W.2d 713 (1948).

The issue then becomes whether the holder of a possibility of reverter may enjoin an act of waste which, in this case, is the proposed removal of the grandstand. In *Watson* v. *Wolff-Goldman Realty Co.,* 95 Ark. 18, 128 S.W. 581 (1910), we held that a contingent remainderman may

enjoin waste where the estate may become his at the termination of a life estate. However, the chancellor correctly noted in the present case there is no proof that the termination of the determinable fee is ever likely to occur. Instead, there is a possibility the determinable fee will endure forever, as distinguished from the remainder following the life estate in the *Watson* case, supra. The chancellor also found that the alleged waste could cause no serious damage to the property and denied the injunction. We affirm. The holder of a possibility of reverter can restrain an act of waste by the holder of a determinable fee only when it appears that there is a reasonable certainty that the fee will terminate and the waste would cause serious damage to the property. *Dees, et al v. Cheuvronts, et al,* 240 Ill. 486, 88 N.E. 1011 (1909). Thompson on Real Property, Vol. 4 p. 405 (Repl. 1979).

Affirmed.