INTEGON LIFE INSURANCE CORP.
*v.* George M. VANDEGRIFT

CA 83-281                    669 S.W.2d 492

Court of Appeals of Arkansas
Division II
Opinion delivered May 23, 1984

*Wright, Lindsey & Jennings,* for appellant.

*Theodore Lamb,* for appellee.

TOM GLAZE, Judge. This appeal results from a declaratory judgment action brought in chancery court by appellee George M. Vandegrift pursuant to Ark. Stat. Ann. §§ 34-2501 to -2512 (Repl. 1962). The appellant, Integon Life Insurance Corporation (Integon), alleges on appeal that the chancellor erred in ruling that the employment agreement between appellant and appellee was neither terminable at will nor terminable upon ten days' notice.

The facts are virtually undisputed. In September of 1981, Vandegrift became employed as regional director for Integon in Arkansas and Oklahoma. David Pollock, agency director for Integon at that time, wrote Vandegrift a letter dated September 8, 1981, to "detail the agreements" the parties had reached verbally the week before. The letter included details of Vandegrift's salary, his territory and other matters related to his employment. The letter referred to a "regional director's contract" and an "enclos[ed] . . . complete set of contract papers." In late September Vandegrift attended an orientation program at Integon's

home office in Winston-Salem, North Carolina. While in Winston-Salem, Vandegrift signed a "Regional Director Contract" dated September 30, 1981. These two documents — the September 8 letter and the September 30 contract — created the dispute that led to the declaratory judgment action. Vandegrift claims that he was guaranteed a minimum of three years' employment and points to language in the letter to support his assertion. Integon, on the other hand, claims that a termination provision contained in the Regional Director Contract applies to all of its employment contracts, including the one with Vandegrift. That provision reflects that either party may terminate the employment agreement with ten days' notice to the other party.

In October, 1982, Vandegrift attended a meeting in Winston-Salem at which Integon's new president announced an increase in income requirements for all regions. He also said that Integon intended to consolidate some of its smaller regions into larger ones. In January of 1983, Vandegrift attended another regional meeting, and his new agency director indicated that changes in the Arkansas-Oklahoma region might be forthcoming. About a week later, the agency director informed Vandegrift that the Arkansas-Oklahoma region was being combined with a portion of Tennessee. He asked Vandegrift to sign a new marketing general agent's agreement (not a regional director's contract) by the next morning or relinquish all rights to profit from sales made by agents he had recruited.

Vandegrift did not sign the new agreement. Instead, he filed a declaratory judgment action in February, 1983, asking the court to determine the parties' rights and obligations with regard to Vandegrift's employment agreement or agreements. He specifically requested the court to resolve the dispute over (1) the contractual validity of the terms and conditions of the letter dated September 8, 1981, and (2) the contractual validity of the ten-day termination clause in the contract dated September 30, 1981.

At trial, the court heard testimony from both Vandegrift and Dave Pollock, a regional director and formerly the agency director who had recruited Vandegrift for Integon.

Both men testified about the circumstances surrounding Vandegrift's association with Integon and about the two disputed documents. The trial court found, in part:

> 1.   The provisions contained in the letter of September 8, 1981 . . . and the subsequent performance of both parties, causes this letter to become an enforceable contract between the parties for a term of three years from on or about September 8, 1981, at the rates and other terms identified in the letter, for the regional area of Arkansas and Oklahoma.

> 2.   The bilaterally executed agreement of September 30, 1981, is integrated into the contract of September 8, 1981, except in two areas that appear inconsistent with the terms and conditions of the September 8, 1981, letter, to-wit:

>> (A)   Section II. Territory and Part 6 Territory.

>> (B)   Section IX. Termination

> These sections appear to deprive Plaintiff [Vandegrift] of substantive contractual rights contained in the contract letter of September 8, 1981, without extending to Plaintiff any new consideration; were not explained to the Plaintiff in such a fashion as to make him aware of the proposed diminution of contractual rights and the two sections aforementioned are irreconcilable with other sections of the contracts calling for payment over a three-year period and setting premium goals in anticipation of volume in the Arkansas-Oklahoma geographic area.

> 3.   The Court is without jurisdiction to enjoin either party from terminating a personal service contract, but if such termination occurs, the Court retains jurisdiction in the event either party chooses to present a proper petition for damages that may result from such termination.

The appellant's only point for reversal is that the

chancellor erred in finding the employment agreement between Vandegrift and Integon neither terminable at will nor terminable upon ten days' notice. Appellant argues that because neither the letter nor the contract set out a specific term of employment, the agreement was terminable at the will of either party, in accordance with the common law rule. *See Griffin* v. *Erickson,* 277 Ark. 433, 642 S.W.2d 308 (1982); *M.B.M. Co.* v. *Counce,* 268 Ark. 269, 596 S.W.2d 681 (1980). In the case at bar, however, the chancellor found that a specific term of employment was agreed upon. If that finding was correct, then the common law rule upon which the appellant relies would not apply. On appeal, we review the record *de novo* and affirm unless the chancellor's findings of fact are clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a). Here, we must determine whether the chancellor clearly erred in finding that a three-year term was provided by the parties' agreement.

The chancellor found that the letter of September 8 and the contract of September 30 must be construed together in order to ascertain the parties' intended agreement. The chancellor found that two sections in the September 30 contract, one pertaining to "territory" and one to "termination" were irreconcilable with provisions in the letter of September 8 covering the same subject matter. We believe that the law in Arkansas, as applied to the facts of this case, supports the chancellor's decision.

The September 8 letter was from Pollock to Vandegrift and was a follow-up to a meeting between them. The letter specifically outlined Vandegrift's territory, the production requirements for that territory for each of three years and Vandegrift's salary. The letter provided, in part, as follows:

> Your territory will comprise the states of Arkansas and Oklahoma and will be detailed as part of your regional director's contract. . . . [T]he minimum requirements for production should be $350,000 of premium the first full year under contract, $600,000 the second full year under contract and $950,000 the third complete year under contract. . . .

As we discussed, we will be sending you a check for $6,000 each month. $2,500 of the monthly check will be our investment in you with the additional $3,500.00 being a draw against your regional director earnings and overrides.

The $2,500 of subsidy each month will continue for 36 months for a total investment of $30,000 a year or $90,000 over a three-year period. We will continue the $3,500 monthly advancement until you have developed a credit in your account. Hopefully, you will have developed a credit in your account before the 36-month investment period has expired and at such time that it looks that your monthly production will provide a steady cash flow, then you would have the option of coming off the advance program and going on monthly credit balance and receiving a check for any credit balance built up in your account.

None of the salary information specified above was included in the September 30 contract. Both Vandegrift and Pollock testified that the letter set out the oral agreement they had reached the week before. Pollock testified that the $2,500 "investment" in Mr. Vandegrift was a "separate agreement," not a part of the regional director's contract. He stated that the *only* details of the "financing agreement for new regional director" was his letter of September 8. Pollock explained the situation as follows:

Each regional director has a contract which is the regional director's contract, and that governs the terms of his employment with Integon. Okay, with a new regional director, we also offered additional financing over and above the contract to help him get started. My letter was to clarify the financing that we had offered to Mr. Vandegrift. . . . The letter itself is the agreement.

In other words, the letter is crucial to an understanding of one important aspect of Vandegrift's employment with Integon — his salary. In addition to specifics of salary, the letter specified Vandegrift's territory as the states of Arkansas and Oklahoma. The "Territory Supplement" of the Sep-

tember 30 contract set out "All Counties" of Arkansas and Oklahoma as his territory with the added condition that assignments are subject to change in the discretion of Integon.

Vandegrift also testified about the circumstances surrounding his signing of the September 30 agreement. After receiving the September 8 letter, Vandegrift complied with the company's instructions and got a physical examination. On September 15, he resigned his position as vice president and assistant agency director of First Pyramid Life Insurance Company. He leased office space on September 17, bought office furniture and prepared to commence business. Although the exact date is in conflict, at the end of September or the beginning of October, he went to North Carolina to attend a regional meeting and an orientation program. Vandegrift testified that at the end of a full week there, the following occurred:

> I was sitting in Dave Pollock's office, and a person came in with this document, and said in order to — in words such as make this whole thing complete, we need your signature here and here and here and whatever the number of signatures are. . . . [I]f I hadn't signed that agreement, I wouldn't have had a job.

We believe the preponderance of the evidence supports the chancellor's finding that the letter of September 8 was an enforceable contract between Vandegrift and Integon and that this letter and the contract of September 30 became integrated to express the full agreement of the parties. Vandegrift testified that he interpreted the September 8 letter to mean he had a three-year contract with Integon, and the letter merely substantiated "what he had been told." The evidence also supports the chancellor's disregard of those contract provisions governing territory and termination that were irreconcilable with specific agreements set out in the letter. These parties' agreement is governed by general rules for the construction of contracts. A contract is to be considered as a whole, and if the agreement of the parties is embraced in two or more instruments, both or all of the instruments must be considered together. *Wallace* v. *United*

*States,* 294 F.Supp. 1225, 1231 (E.D. Ark. 1968). In *W. T. Rawleigh Co.* v. *Wilkes,* 197 Ark. 6, 121 S.W.2d 886 (1938), the Arkansas Supreme Court said:

> The principal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. . . . This court has many times held that in ascertaining the intention of the contracting parties, courts may acquaint themselves with the persons and circumstances mentioned in the contract, and may place themselves in parties' situation. . . .

*Id.* at 9-10, 121 S.W.2d at 888 (citations omitted).

In ascertaining the parties' intent, the chancellor heard the testimony of both Vandegrift and Pollock. The court considered the actions of the respective parties from the time of the letter. Vandegrift resigned his position, set up his Integon office and began conducting Integon business. At the end of October, 1981, Integon began paying Vandegrift $6,000 a month pursuant to the letter and was still paying that amount monthly at the time this cause was heard in March, 1983. As noted previously, Vandegrift interpreted the parties' September 8 letter to mean that he had a three-year contract with Integon, and the letter merely substantiated what he had been told. Because the parties' initial financial agreement was exclusively contained in that letter and revolved around a three-year period, we believe the chancellor's finding that Integon contracted to pay Vandegrift over a three-year period is supported by the evidence. Therefore, we affirm.

Affirmed.

MAYFIELD, C.J., and CLONINGER, J., agree.