LINDELL SQUARE LIMITED PARTNERSHIP, et al.
*v.* SAVERS FEDERAL SAVINGS AND LOAN
ASSOCIATION

CA 88-234 766 S.W.2d 41

Court of Appeals of Arkansas
Division II
Opinion delivered March 8, 1989
[Rehearing denied May 24, 1989.]

*David Orsini*, and *Friday, Eldredge & Clark*, by: *Bill S. Clark*, for appellant.

*Hoover, Jacobs & Storey*, by: *Lawrence J. Brady* and *O.H. Storey III*, for appellee.

JAMES R. COOPER, Judge. The appellee in this civil case brought an action to accelerate a note made by Lindell Square Limited Partnership and to establish liability under a bond guaranty executed by Richard L. Grant, the general partner of Lindell Square, and E.M. Bush, a limited partner. The trial court found Grant and Bush individually liable under the bond guaranty agreement. From that decision, comes this appeal and cross-appeal.

The record shows that Lindell Square obtained a $1,100,000.00 loan from Central Business Improvement District No. 1 of Hot Springs to finance renovation of an office building. The Improvement District obtained the funds loaned to Lindell Square by the sale of revenue bonds, and Lindell Square executed a promissory note in the amount of $1,100,000.00 to evidence the loan. The promissory note was secured by a mortgage, assignment of leases, and equipment security agreement. The Improvement District assigned the promissory note and its interest in the security instruments pertaining to the note to First National Bank of Hot Springs as trustee under a trust indenture agreement. The trustee bank received payments from Lindell Square for disbursement to the bondholders. Lindell Square also obtained from Savers Federal Savings and Loan Association, in connection with the bond issue, an irrevocable letter of credit in an amount sufficient to pay the principal and interest on the bonds in the event of default by Lindell Square. Finally, Grant and

Bush, in their individual capacities, entered into a bond guaranty agreement with the trustee bank in which they severally guaranteed to the trustee full payment of principal, premium, and interest on bonds which should become due as a result of maturity, acceleration, or redemption.

Lindell Square defaulted by failing to pay an installment due on December 1, 1986. On December 8, 1986, the trustee bank drew $93,905.25 under the letter of credit, which Savers paid. Savers subsequently directed the trustee bank to take the steps necessary to effect redemption of the bonds prior to maturity. In a public notice published on January 9, 1987, the trustee bank announced that the bonds were to be redeemed on February 13, 1987. On February 11, 1987, the trustee drew $1,064,442.85 on Savers' letter of credit to obtain the funds necessary to effect redemption of the bonds. The bond guaranty and other collateral subject to the trust indenture were assigned by the trustee to Savers on February 12, 1987. Savers' subsequent failure to obtain reimbursement from Grant and Bush as guarantors gave rise to the case at bar.

The appellants first contend that the chancellor erroneously extended the terms of the guaranty by: 1) failing to strictly construe the guarantors' undertaking; 2) holding the guarantors liable beyond the strict terms of the guaranty; and 3) failing to accord the guarantors their favored status under the law by extending their liability beyond the express terms of the bond guaranty agreement. The essence of this argument is that the guarantors' liability under the bond agreement terminated on payment or redemption of the bonds; that Savers elected to pay and redeem the bonds; and that the guarantors' liability under the bond guaranty agreement had thus been discharged before the trustee assigned the bond guaranty to Savers.

The chancellor found Grant and Bush to be personally liable on the bond guaranty under §302 of the trust indenture, which provides that, in the event of default under the letter of credit agreement, Savers may direct the trustee to take the steps necessary to redeem the bonds prior to maturity. Section 302 states that after the trustee notifies the bondholders of the call for redemption,

[Savers] shall deposit with the trustee such funds as are

> necessary to effect the redemption of the bonds at least one business day prior to the date specified for the redemption. Upon such redemption, *notwithstanding any other provision of the Indenture to the contrary*, the trustee shall deliver to [Savers] the bonds so tendered for redemption without cancellation or other notation, together with all other matured and unmatured interest coupons attached thereto or otherwise tendered for payment, and shall assign to [Savers] all right and title to all properties and interests which are subject to this Indenture, *including the Bond Guaranty, and the Indenture may thereafter be enforced by [Savers] in the place and stead of the trustee, as if [Savers] were the trustee.* If an event of default under the letter of credit agreement shall have occurred and be continuing, [Savers] shall not be required to elect a redemption of all outstanding bonds, and may choose to make payments under the letter of credit . . . and shall be entitled to enforce all available remedies available at law or in equity *whether by the right of subrogation herein granted*, or otherwise, to recover from the Developer all sums due and owing under the Letter of Credit Agreement.

[Emphasis supplied]. The appellants contend that §302 of the trust indenture does not permit Savers to enforce the bond guaranty where, as here, Savers opted to redeem the bonds rather than leave the bonds outstanding. They argue that their obligations under the bond guaranty agreement terminated when Savers provided the trustee with funds for the redemption of the bond issue and that, although Savers may be entitled to recover under the note, mortgage, security agreement, and lease agreement, the personal liability of Grant and Bush was extinguished by redemption of the bond issue. This argument is based primarily on §2.2 of the bond guaranty agreement, which provides that:

> The obligation of the Guarantors under this Guaranty shall be absolute and unconditional, and shall remain in full force and effect until the entire principal of, premium, if any, and interest on the Bonds shall have been paid or provided for under the Indenture . . . .

The appellants assert that, because paragraph 8(c) of the bond

provides that the bonds should no longer be considered outstanding or subject to protection under the indenture after redemption from the proceeds of the letter of credit, the principal, premium, and interest on the bonds were "provided for" under §2.2 of the bond guaranty agreement, and the personal liability of Grant and Bush under the bond guaranty was therefore discharged before the bond guaranty was assigned to Savers. Because the trustee had no rights under the bond guaranty after funds for redemption of the bonds were provided by Savers, they argue, Savers acquired no rights by virtue of assignment of the bond guaranty.

 Where, as here, the agreement of the parties is embraced in two or more instruments, all of the instruments must be considered together to determine the intent of the parties. *Integon Life Ins. Co.* v. *Vandergrift*, 11 Ark. App. 270, 669 S.W.2d 492 (1984). A construction which neutralizes any provision of the contract can not be adopted if the contract can be construed in a way which gives effect to all its provisions. *North* v. *Philliber*, 269 Ark. 403, 602 S.W.2d 643 (1980). Under the definition section of the trust indenture, the word "bonds" is defined in terms of the entire bond issue. Section 302 of the indenture clearly provides that Savers may, upon default, elect to redeem all of the bonds by depositing with the trustee the funds necessary for redemption, and that Savers would subsequently be assigned all properties and interest subject to the indenture, which could be enforced by Savers. The bond guaranty is explicitly included in the category of properties and interests enforceable by Savers after assignment. The appellants urge us to adopt a construction which would render meaningless the provision for assignment of the bond guaranty to Savers after funds for redemption of the bond issue had been deposited with the trustee, because, under the appellants' construction, liability under the bond guaranty would be extinguished before the bond guaranty was assigned. Although it is true that a guarantor is entitled to have his undertaking strictly construed and cannot be held liable beyond the strict terms of his contract, *Shamburger* v. *Union Bank of Benton*, 8 Ark. App. 259, 650 S.W.2d 596 (1983), a guarantor is nevertheless bound by the clear wording of his agreement. *See Vogel* v. *Simmons First National Bank*, 15 Ark. App. 69, 689 S.W.2d 576 (1985). In the case at bar the bond indenture clearly provides for the assignment of the bond guar-

anty to Savers after funds for redemption of the bond issue have been delivered to the trustee, and for the subsequent enforcement of the bond guaranty. We may not adopt an interpretation which neutralizes this provision if the contract is susceptible to a construction that will make the provision valid. *RAD-Razorback Ltd. Partnership* v. *B.G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 462 (1986). Section 302 of the bond indenture makes reference to "the right of subrogation herein granted," and under the rules of construction cited above, we find that the intent of the parties was to grant Savers a right of subrogation in the trustee's rights under the trust indenture, including the bond guaranty agreement. The appellants contend that the doctrine of subrogation is inapplicable because the written contract implicitly forbids the application of the doctrine under these circumstances. We disagree, for we find that the written agreement both expressly and implicitly requires the application of the doctrine under the facts of this case. *See Southern Cotton Oil Co.* v. *Napoleon Hill Cotton Co.*, 108 Ark. 555, 158 S.W. 1082 (1913). Subrogation is an equitable doctrine which:

> rests upon the maxim that no one shall be enriched by another's loss, and may be invoked whenever justice and good conscience demand its application in opposition to the technical rules of law, which liberate securities with the extinguishment of the original debt. This equity arises when one not primarily bound to pay a debt, or remove an incumbrance, nevertheless does so; either from his legal obligation, as in case of a surety, or to protect his own secondary right; or upon the request of the original debtor, and upon the faith that, as against the debtor, the person paying will have the same sureties for reimbursement as the creditor had for payment.

*Id.*, 108 Ark. at 559. Savers' obligation to pay was not primary, but rather was secondary in that the obligation arose only in event of Lindell Square's default. Moreover, the guarantors were not strangers to the transaction, but instead were partners in Lindell Square, and they executed a bond guaranty specifically stating that the guaranty was for Savers' benefit, and it was executed as an inducement to Savers to extend its letter of credit. Finally, the trust indenture reflects an intent that Savers should have recourse to the bond guaranty upon Lindell Square's default and redemp-

tion of the bond issue. Under these circumstances, we find that both equity and the written agreement require that Savers be subrogated to the trustee's rights under the bond guaranty agreement, and that Savers' rights under the bond guaranty survived extinguishment of the original debt. *See Southern Cotton Oil Co* v. *Napoleon Hill Cotton Co., supra*; 73 Am. Jur. 2d *Subrogation*, §110 (1974). We hold that the chancellor did not err in finding that §302 provided for the personal liability of the guarantors after Savers provided the trustee with funds for the redemption of the bond issue.

The appellants next contend that the chancellor erred by failing to construe §302 of the trust indenture in a manner which would give effect to all the documents which comprise the parties' agreement. The thrust of this argument is that Savers had several options upon default; that these options were inconsistent; and that, under the option selected, Savers was precluded from proceeding against the guarantors on the bond guaranty. We do not agree, because we find that Savers' options under the letter of credit agreement and under the bond guaranty were not inconsistent. Section 8.05 of the letter of credit agreement specifically provides that Savers will not be precluded from exercising any right under the letter of credit agreement, "or the exercise of any other right, power or privilege," by acting or failing to act upon its rights under the letter of credit agreement. Likewise, the bond guaranty agreement explicitly recites that the parties intended that the remedies available under the guaranty were not to be exclusive of any other available remedy at law or in equity. Moreover, as we have noted, §302 of the trust indenture provides that the bond guaranty would be assigned to Savers for enforcement in the event of default and provision of funds for redemption of the bond issue. We find that Savers' remedy under the bond guaranty was cumulative to the remedies provided for in the letter of credit agreement.

Next the appellants contend that the promissory note was the final expression of the parties' agreement and that, because the promissory note did not provide for personal liability, the note modified the agreement to preclude personal liability under the bond guaranty in an action to enforce the promissory note. The loan agreement is dated December 1, 1981, and the promissory note is dated January 26, 1982. However, from our

review of the record it is clear that, although many of the instruments which comprise the contract are dated December 1, 1981, (the date the bonds began to accrue interest), the final closing on the bond issue did not take place until January 26, 1982. Moreover, the bond guaranty itself was not delivered to the trustee until January 26, 1982. Under these circumstances, we find no significance in the disparity in the dates on which the loan agreement and promissory note were executed, and hold that the note did not modify the loan agreement so as to preclude personal liability under the bond guaranty.

■ Finally, the appellants contend that the chancellor erred in refusing to rule on the trustee's assertedly improper disbursement of fire insurance proceeds. The record shows that the project was damaged by fire while work was in progress, and that approximately $219,000.00 in fire insurance proceeds were paid by the insurer and deposited with the trustee. The appellants assert that the insurance funds were improperly disbursed by the trustee, that these proceeds should have been paid to Bush Construction Company, and that the appellant, E.M. Bush, as alter ego of Bush Construction Company, is entitled to set-off or credit for the amount of the proceeds. Under the loan agreement, the fire insurance proceeds received by Bush Construction Company were to be delivered to the trustee, and applied by the trustee to the cost of repair either on completion or as the repair work progressed, as directed by Lindell Square, the developer. The appellants contend that the trustee failed to set aside the fire insurance proceeds in a separate fund to be used for the sole purpose of satisfying the cost of repair as required by the agreement. We find no reversible error because, even if it is assumed that the fire insurance proceeds were not disbursed in the manner provided for in the agreement, it is nevertheless clear that all of the fire insurance proceeds were in fact disbursed. The record shows that Bush Construction Company was paid through monthly pay requests directed to Grant as general partner of Lindell Square. This procedure was used with respect to both regular construction and fire damage construction. Grant testified that Bush's pay requests were sent by Grant to the trustee, were paid by the trustee, and that all funds held by the trustee were ultimately paid out. Moreover, the claim for set-off was not advanced by Bush Construction Company, or by Bush individu-

ally, but instead was pled in an amended answer and was asserted on behalf of all the appellants. The chancellor's letter opinion clearly reflects that he considered the asserted right to set-off as a joint claim advanced on behalf of the appellants in general. Under these circumstances, we find that the appellants were not damaged by the trustee's asserted failure to disburse the fire insurance proceeds in the specific manner provided for in the agreement, because all the proceeds were ultimately used to pay requisitions submitted by Lindell Square. Therefore, no prejudice resulted from the chancellor's refusal to rule on the trustee's allegedly improper disbursement of those proceeds, and any error which may have occurred was harmless. Ark. R. Civ. P. 61.

On cross-appeal, the appellee contends that the chancellor erroneously limited liability under the guaranty to a percentage of the deficiency remaining on the note after application of the proceeds of foreclosure. The chancellor found that the principal and interest due on the notes totalled $1,316,274.14. From this he subtracted foreclosure proceeds of $599,206.15, and determined the liability of the guarantors to be $717,067.99. He found Bush liable for 20% of $717,067.99, and Grant liable for 80% of $717,067.99. This finding was based on §2.4 of the bond guaranty which limits the liability of Bush and Grant to 20% and 80%, respectively, of the amount due under the note.

The cross-appellant concedes that its total recovery is limited to the $717,067.99 deficiency which remains unsatisfied after application of the foreclosure proceeds to the amount of the judgment, but argues that the ceiling of each guarantor's liability should be calculated on the basis of the amount due under the note prior to foreclosure, rather than on the basis of the deficiency remaining after partial satisfaction of the judgment. Under the formulation advanced by the cross-appellant, Bush and Grant are personally liable under the bond guaranty for 20% and 80% of $1,316,274.14, although the cross-appellant's recovery after application of the foreclosure proceeds is limited to $717,067.99 from all sources.

The question for this Court to resolve is whether the parties intended for the guarantors' liability to be computed as a percentage of the amount due on the bonds *at the time of default*, or instead as a percentage of the deficiency remaining after

resorting to other security. Under the bond guaranty, Bush and Grant guaranteed the full and prompt payment of principal, premium, and interest of any bond *when it became due*. Section 2.2 of the bond guaranty provides that the guarantors' obligations are unconditional and absolute, and are to remain in effect until the principal, premium, and interest of the bonds has been paid or provided for under the trust indenture. These obligations are unaffected by:

> the taking or the omission of any of the actions referred to in the Indenture and of any actions under this Guaranty . . . [or by] any failure, omission, delay or lack on the part of the District, the Trustee, or [Savers] to assert or exercise any right, power or remedy conferred . . . in this Guaranty, the Indenture or the Letter of Credit Agreement. . . .

Section 2.3 of the bond guaranty provides that:

> No set-off, counterclaim, reduction, or dimunition of any obligation, other than payment, or any defense of any kind or nature which the Developer or the Guarantors have or may have against the District, the Trustee or [Savers] shall be available hereunder to the Guarantors against the Trustee.

The trustee is given the right, under §2.4 of the bond guaranty, to:

> proceed first and directly against the Guarantors under this Guaranty without proceeding against any other person or exhausting any other remedies which it may have *and without resorting to any other security.* . . .

[Emphasis supplied]. These provisions show that the parties clearly intended for the guarantors' maximum liability to be calculated as a percentage of the amount due on the bonds at the time of default. First, the bond guaranty recites that the guarantors' liability is absolute. Under an absolute guaranty, the liability of the guarantor becomes fixed upon the debtor's default. *Bank of Morrilton* v. *Skipper, Tucker & Co.*, 165 Ark. 49, 263 S.W. 54 (1924). Next, we note that, under the unambiguous language of the contract, the bond guaranty can be enforced directly, without regard to the availability of other remedies or the existence of other security. We think this provision indicates

that the guarantors' liability was intended to be independent of and in addition to other security, and independent of any actions taken with respect to other security. *See Crown Life Ins. Co. v. LaBonte,* 111 Wis. 2d 26, 330 N.W.2d 201 (1983). Finally, in keeping with the weight of precedent established in similar cases, we hold that the chancellor erred in applying the foreclosure proceeds to reduce the guarantor's contractual limit of liability, rather than merely to reduce the indebtedness. *See Southern Bank & Trust Co. v. Harley,* 292 S.C. 340, 356 S.E.2d 410 (1987); *see also Woodruff v. Exchange National Bank,* 392 So. 2d 285 (Fla. App. 1981); *Telegraph Savings & Loan Ass'n v. Guaranty Bank & Trust,* 67 Ill. App. 3d 790, 24 Ill. Dec. 330, 385 N.E.2d 97 (1978); *Crown Life Ins. Co. v. LaBonte, supra.* We find that the contractual liability of Bush under the guaranty is 20% of $1,316,274.14, and the contractual liability of Grant is 80% of $1,316,274.14, Savers' recovery being limited to the outstanding deficiency of $717,067.99.

Affirmed on direct appeal; reversed on cross appeal.

CRACRAFT and MAYFIELD, JJ., agree.