## JOHNSON *v.* BRYANT.

Opinion delivered November 23, 1895.

LANDLORD AND TENANT—RENT —A tenant who agrees to pay as rent one-fourth part of the cotton raised by him on the land, or its value, cannot refuse to account for part of the cotton raised because such portion could not be gathered without much inconvenience and unusual expense. To excuse a failure to perform the contract, the tenant must show that it was caused by the act of God, of the landlord, or of the public enemy.

Appeal from Crawford Circuit Court.

NIMROD TURMAN, Special Judge.

### STATEMENT BY THE COURT.

This action was brought in the court of a justice of the peace to recover a balance of fifty dollars for rent of land. The case came to the circuit court on appeal, and was decided against the plaintiff, who is appellant here. The facts are that appellant rented to appellee twenty acres of land, that was planted by appellee in cotton, under a verbal contract that appellee should pay to appellant for the rent of same one fourth part of the cotton, or its cash value, raised on the land. The appellee deposited thirty dollars in bank, to the credit of appellant to cover the rent, and refused to pay more. There was evidence tending to show that appellee raised eight bales of cotton of 500 pounds each on the land, worth eight cents per pound, and some of it was not gathered, one and one-half bales being left in the field. The evidence tended to show that the appellee offered to pay ten cents per hundred pounds more than others were paying in the neighborhood to get the cotton picked, but could not get it all gathered, and that he did not raise as much cotton as the plaintiff's evidence tended to show he did raise, and that his cotton was so

poor he could not get hands to pick it out. There was evidence, also, tending to show that there was no difficulty in that neighborhood in getting hands to pick cotton on the "Rector" farm, where appellee's cotton was grown.

After the evidence was all heard, plaintiff asked the court to give the jury the following instructions and declarations of law:

"1. The court declares the law to be that, if it appears from the evidence that the defendant was by the terms of the contract to pay plaintiff one-fourth part of the cotton raised on said twenty acres of land cultivated by him in cotton, or its value in cash, then it was the duty of the defendant to gather the cotton and pay the plaintiff her rent in good and apt time after the cotton matured.

"2. The court further declares the law to be that, if it appears from the evidence that the defendant failed to gather and save a part of the crop of cotton which he raised on said land, or through negligence permitted it to be wasted or lost, or converted any part of said cotton to his own use, he, the defendant, is nevertheless bound to pay plaintiff her rent the same as if said cotton had been gathered by defendant and accounted for in apt and proper time.

"3. The court instructs the jury that, if it appears from the evidence that the one-fourth part of the cotton raised by the defendant on said twenty acres of land exceeds in cash value the thirty dollars deposited by defendant in the Crawford County Bank to plaintiff's credit, they will find for the plaintiff for the amount above said thirty dollars."

The defendant excepted to these declarations of law and instructions, and the court refused to give any of them, to which refusal plaintiff excepted at the time.

The following instruction was given by the court:

"5. If you find that the defendant raised cotton which he did not gather, you will find for the plaintiff the one-fourth of the value of the cotton not gathered, unless you further find that defendant could not with due diligence have gathered the same, and the burden to show that such cotton could not have been gathered with due diligence rests upon the defendant."

To the giving of the fifth instruction, plaintiff objected at the time.

The jury having returned into court a verdict for the defendant, plaintiff filed her motion praying for a new trial and assigning the following causes therefor: "(1) Because the verdict of the jury is contrary to law and evidence. (2) Because the court erred in refusing to give the jury the declarations of law numbers one and two, and instruction number three, asked for by the plaintiff. (3) Because the court further erred in giving to the jury the fifth instruction asked for by defendant, which rulings and action of the court had a tendency to mystify and mislead the jury, greatly to the prejudice of plaintiff's rights."

The motion for a new trial was overruled, to the overruling of which motion plaintiff at the time excepted, and appealed to this court.

*Turner & Turner* for appellant.

1. Taking the defendant's own testimony, he failed to pay the amount due by $6.34. As to this amount, the mixim "*De minimis, etc.*," does not apply, as it constitutes a *considerable* portion of the whole. 57 Ark. 304. Taking the plaintiff's testimony as true, there was still due about $50.

2. Appellee was bound by the terms of his contract to pay one-fourth of the cotton raised, or its equivalent; and there is no escape from its binding force, unless

he was prevented from gathering the crop and account-
ing for the rent by the act of God or the public enemy,
or of the appellant, and the burden of proving these, or
any of them, was on the appellee. Bish. on Cont. secs.
372-3-4-5; 3 Kent, 465-6-7-8 and note; 7 Ark. 130; 25
*id.* 441; 2 Wall. (U. S.) 1.

HUGHES, J., (after stating the facts). A majority
of the court are of the opinion that the proper con-
struction of the contract between appellant and ap-
pellee is that appellee was bound, by its terms, to
gather and deliver to appellant one-fourth of the cotton
raised on the twenty acres; and that only the act of God,
or the public enemy, or the act of the appellant, could
excuse him from a compliance with this contract; that
inconvenience or the cost of compliance, though they
might make compliance a hardship, cannot excuse a
party from the performance of an absolute and unqual-
ified undertaking to do a thing that is possible and law-
ful. Parties *sui juris* bind themselves by their lawful
contracts, and courts cannot alter them, because they
work hardships. The parties must take care of them-
selves, and must be held to the performance of their
undertakings, when it is possible to perform them, and
they are not unlawful. "But, to make the act of God a
defense, it must amount to an impossibility of perform-
ance by the promisors. Mere hardship or difficulty will
not suffice." 2 Parsons on Cont. (8 ed.) p. 672. It was
not pretended that the cotton raised on the twenty acres
*could not* be gathered; only, that it could not be gathered
without much inconvenience and great and unusual ex-
pense. This would not excuse the appellee from per-
formance of his contract to gather, which is included in
his agreement to pay appellant one-fourth the cotton
grown or its cash value. If he made this contract, and
it proved a hard one, by the performance of which he

would evidently be at great inconvenience and suffer much loss, nevertheless, if possible of performance, he was bound to perform it unless excused as indicated.

The circuit court erred in refusing the instructions asked by plaintiff, and giving the one (number five) above, for which the judgment is reversed and remanded for a new trial.

RIDDICK, J., (dissenting.) I concur in the judgment, but do not agree to so much of the opinion as holds that nothing but the act of God or the public enemy can excuse the tenant from gathering his crop. When the tenant agrees to give a fixed sum of money or a certain quantity of cotton or other produce for rent, this rule would apply; but it is different when, as in this case, the tenant agrees to cultivate and gather the crop, and give the landlord a certain portion of the crop raised. The amount of the rent then depends upon the quantity of the crop raised, and this depends not only upon the labor and skill of the tenant and the fertility of the soil, but also upon the many contingencies that may beset even the most prudent husbandman.

The tenant must use due diligence both in cultivating and in gathering the crop, and the landlord is entitled to a share in such a crop as the tenant by labor and diligence can harvest, but to no more. The landlord may sue the tenant for the value of his share of the crop. In such a suit I agree that it would not be a valid defense for the tenant to say that the cost of gathering the crop would be greater than its value, for he must comply with his contract. But if a thief should enter the field at night, and steal a portion of the crop, or if, without fault of the tenant, a herd of breachy cattle should break in and destroy a portion of the crop, the landlord should, under a contract such as we have here, lose proportionately with the tenant; for the

agreement of the tenant, as I understand it, is not that he will give a fixed amount of rent, but only such a share in such a crop as he may be able to culivate and gather by due diligence. He is not an insurer of the crop, nor liable for its loss by causes against which he could not have guarded by the use of care and diligence.

For these reasons, it seems to me that the expression that nothing but the act of God or the public enemy can excuse the tenant, when applied to the facts of this case, is not an accurate statement of the law.

BUNN, C. J., concurs.