## The DOW CHEMICAL COMPANY *v.*
## J. B. and Joy WARMACK

83-215                                    661 S.W.2d 376

### Supreme Court of Arkansas
### Opinion delivered December 12, 1983

*Keith, Clegg & Eckert,* for appellant.

*Anderson, Crumpler & Bell, P.A.,* for appellees.

GEORGE ROSE SMITH, Justice. In 1982 the appellees, husband and wife, agreed to lease fourteen-and-a-third acres of land to the appellant for the production of salt water (brine), from which bromine is to be extracted. When the Warmacks tendered a lease, Dow refused to accept it for the asserted reason that the Warmacks had only a non-participating interest in the minerals and therefore lacked the

authority to execute a lease. In what is perhaps a test case the Warmacks brought this suit to compel Dow to accept the lease. The chancellor held that J. B. Warmack, under a printed form of Royalty Deed executed to him in 1962, had only a non-participating interest in the tract's oil and gas, but he had an unrestricted royalty interest in other minerals and therefore could lease the land for the production of salt water. Dow's appeal comes to this court under Rule 29 (1) (n).

We are told that the printed form of Royalty Deed has been in use for about fifty years. Since the deed before us differs slightly from that considered in *Barret* v. *Kuhn,* 264 Ark. 347, 572 S.W.2d 135 (1978), we shall quote its principal pertinent provisions.

The present conveyance is entitled Royalty Deed. The word "non-participating" does not appear under that title, as it did in *Barret.* By the granting clause W. T. Pride conveyed to Warmack, subject to the terms, conditions, and reservations that followed, an undivided 10.00/114.64 interest "in and to all of the oil, gas and other minerals" in the tract. After a description of the acreage this sentence was typewritten on the form: "It is the intention of grantor herein to convey, and grantor herein does hereby convey to grantee ten (10) royalty acres, non-participating."

The precise terms, conditions, and reservations are then stated in the following language, all of which was printed except the words and figures we have italicized:

> The grantor herein expressly reserves to *himself*[,] *his* heirs or assigns, the exclusive right to lease said lands, or any part thereof, for oil and gas purposes, without interferences, or hindrance upon the part of the grantee, *his* heirs or assigns; and the grantee herein, *his* heirs or assigns, shall never be entitled to receive any part of the consideration, cash or otherwise, paid or to be paid, for any oil and gas mining lease heretofore or hereafter executed covering said land, or any part thereof, nor shall the grantee, *his* heirs or assigns, ever be entitled to receive any part of any delay rentals to

defer the commencement of drilling operations provided by any such lease; and the grantee herein, *his* heirs or assigns, shall not be required to join in the execution and delivery of any oil and gas mining lease covering said land, or any part thereof, in order to convey good title to lessee thereunder; PROVIDED, that the grantor herein expressly covenants with the grantee that no oil and gas mining lease shall ever be executed covering the above land or any part thereof, that shall reserve to the grantor herein, *his* heirs and assigns, as royalty, less than one-eighth of all the oil and gas produced and saved from said land and this covenant shall be deemed a covenant running with the land.

It is the intention of the parties hereto that the grantee herein, *his* heirs or assigns shall be entitled to receive hereunder *10.00/14.33* of all oil and-or gas run to the credit of the royalty interest reserved under and by virtue of any oil and gas mining lease now in force and effect covering said land, and under any oil and gas mining lease hereafter executed covering said land, or any part thereof; and in any event the grantee herein, *his* heirs or assigns shall be deemed the owner of and shall be entitled to receive *10.00/114.64* part of all oil and gas produced and saved from said land, or any part thereof.

The chancellor's decision was right. As we noted in *Barret,* with respect to oil and gas the holder of a non-participating interest is entitled to his share of the royalty from production, but he does not share in bonuses or delay rentals nor have the right to execute leases. Here the paragraphs we have quoted spelled out the grantee's non-participating interest only in any "oil and gas mining lease," a phrase that was used five separate times in the two quoted paragraphs. The granting clause, however, had conveyed an undivided interest in all oil, gas, and *other minerals.* Thus the printed form quite evidently excluded all other minerals from the non-participating provisions of the royalty deed.

The appellant argues, however, that the non-participating limitation was extended to all minerals by the typewritten sentence expressing the grantor's intent to convey "ten royalty acres, non-participating." We disagree. Typewritten provisions prevail over printed ones only when the two are so contradictory that one must yield to the other. *McKinnon* v. *Southern Bureau Cas. Ins. Co.*, 232 Ark. 282, 335 S.W.2d 709 (1960). Here there was no irreconcilable conflict in the 1962 royalty deed. The word "non-participating" clarified the reference to ten royalty acres, but there is no necessity for writing that word into the detailed language explaining just why that royalty interest is in fact to be non-participating. Rather to the contrary, the language of the deed defines "non-participating" and is peculiarly applicable to oil and gas leases. For example, it is specified that no oil and gas lease shall ever be executed that reserves a royalty of less than one eighth of the production. A one-eighth royalty is commonplace in oil and gas leases, but that is not so with regard to other mineral leases. Coal leases usually provide a monetary royalty of so much per ton. In this case the proffered salt-water lease provides only for an annual payment to the Warmacks of $25 for each of the ten acres. Such differences between oil and gas leases and other mineral leases confirm our conviction that the royalty deed to J. B. Warmack was intended to be non-participating only as to the oil and gas, not as to other minerals.

Affirmed.