## Raymond LEONARD, et ux *v.* MERCHANTS AND FARMERS BANK

86-150                                     720 S.W.2d 908

Supreme Court of Arkansas
Opinion delivered December 22, 1986

*L. David Stubbs*, for appellant.

*Gill, Johnson, Gill & Gill*, by: *Brooks A. Gill*, for appellee.

DARRELL HICKMAN, Justice. Less than 30 days after federal legislation was passed overriding the Arkansas usury law, the Merchants and Farmers Bank of Dumas, the appellee, loaned the appellants Raymond and JoAnn Leonard $72,000 to buy 95 acres of land. A promissory note was signed for ten annual installments, and two mortgages were filed to secure the note. Two years later when the bank began charging more than ten percent per annum on the note, the appellants protested. The bank contended that the note provided for such interest. The appellants paid three years under protest. Finally they sued to cancel the note, alleging usury and alternatively to reform the note to provide for an interest rate of ten percent per annum.

The chancellor found for the bank and based his decisions on two important facts. While the·face of the note was typed to read ten percent, the back of the note contained a typewritten paragraph entitled "Interest Adjustment Clause" which read:

The rate of interest shall be the amount stated on the reverse side, or (two) 2% above the New York prime interest rate, whichever is greater, with the interest to be adjusted accordingly on the 1st day of each month, but in no instance shall this note bear a rate of interest less than (ten) 10% or a rate of interest in excess of the maximum amount allowed by Arkansas law.

It was signed by Raymond Leonard. In addition Loral Adcock, the senior vice president of the bank, testified he made the loan and told Leonard he would not make a loan on land at a fixed rate. He said the only way a loan would be made long-term was at a fluctuating rate. Adcock testified he discussed this with Leonard at length before he signed this typewritten provision.

JoAnn Leonard signed the front of the note and the mortgages but did not sign the back of the note, which contained the "Interest Adjustment Clause". She said she would have but was not asked. The chancellor granted the petition to reform to the extent the bank could not collect in excess of ten percent per annum from Mrs. Leonard.

The appellants raise three arguments: Arkansas law rather than federal law applied to this loan; the chancellor was wrong in finding this was a business or agricultural loan; and the parties intended that the note would bear interest at only ten percent per annum. Merchants and Farmers Bank cross-appeals the decision regarding JoAnn Leonard.

The appellants concede that if federal law is applied to this loan, the extra interest charged would not violate the Arkansas Constitution. However, they argue that the parties intended for Arkansas law to apply, not federal law. It is argued that if the provision of the Uniform Commercial Code which provides that parties "may agree that the law either of this state or of such other state or nation shall govern, . . ." Ark. Stat. Ann. § 85-1-105 (Add. 1961), is applied to the facts of this case, it was the parties' intention to apply Arkansas law. The face of the note was typed to

read ten percent, the mortgages read ten percent, the disclosure statement read ten percent, and the schedule of payments for ten years was figured at ten percent. This code argument was not presented to the trial court. This was not a conflict of laws question as suggested by the appellants or a commercial code question. The question was whether this was an agricultural or business loan for $25,000 or more with respect to which federal legislation permits the variable interest sought to be charged by the bank. The parties did not dispute that the annual charges never exceeded that allowed under the federal legislation, although there was a dispute as to whether the bank computed the interest correctly according to the "Interest Adjustment Clause."

■ Leonard testified he was in the construction business, was not a farmer, and did not intend to farm the land; therefore, he argues the loan was not for agricultural purposes. Leonard said he considered it a personal investment. It was agricultural land, however, and Leonard did lease it to a farmer who did farm it. The chancellor made this finding:

> Since the Act [Federal Public Law 96-104] does not define 'business or agricultural loans', the Court must give the language its plain and ordinary meaning. *Worthen* v. *Dillard*, 275 Ark. 132 (1982). Without unduly prolonging discussion of this point, the plain fact is that the loan was for the purpose of acquiring farm land. It would seem to make no difference whether farm land is to be farmed by the obligor or by some third party. In either event, it would appear to be an 'agricultural' loan. Similarly a loan acquired for investment purposes would seem to be included under the term 'business' loan. In either event, the loan was covered by the federal provisions. Consequently, the interest rate was not limited by the Arkansas constitutional provisions in effect at that time. What then, is the effective interest rate? To determine the effective interest rate, the Court must look to the manifested intent of the parties.

The chancellor heard the testimony and made a finding regarding the loan which we cannot say was clearly wrong. ARCP 52.

■ The appellants sought to reform the instruments to reflect the real intent of the parties, arguing that the intent of the

parties was that the interest rate should be ten percent per annum. The documents were not consistent. Indeed, the bank was probably careless in its work. The bank officials explained that they were using old preprinted forms, new federal legislation had just been passed, and the officials did the best they could. But the question to the chancellor as it is to us is what was the intention of the parties. There is a rule of law uniquely suitable to this case which binds us. That is ". . . typewritten provisions prevail over printed ones, only when the two are so contradictory that one must yield to the other . . ." *McKinnon* v. *Southern Bureau Cas. Ins. Co.*, 232 Ark. 282, 335 S.W.2d 709 (1960); *Dow Chemical Co.* v. *Warmack*, 281 Ark. 77, 661 S.W.2d 376 (1983).

This was the finding of the chancellor on this question:

> [Appellants] suggest that in order for the Court to find the variable rate to be the effective rate, the Court must also find numerous errors in the preparation of the instruments and handling of the account. Admittedly, the federal override had been in effect about thirty days when this transaction was consummated. Admittedly, most of the information is composed of insertions into pre-printed forms of "boilerplate" language, which language had been in these type documents '. . . for a time whereof the memory of man runneth not to the contrary.' *Johnson* v. *Lewis*, 2 S.W. 329 (1886). For causes not shown in the record, the bank neglected to charge interest greater than ten percent (10%) for approximately twenty-six and one-half months after the loan was made. Be that as it may, the Court is satisfied that the intent of the parties was to allow a variable rate of interest as provided in the [Interest Adjustment Clause]. Admittedly, Mr. Leonard signed that provision, although he indicated that he did not know whether the blank, evidencing the interest rate, was filled in or not. It is difficult to imagine a more effective way of bringing a matter of consequence to one's attention than by typewritten language on the reverse side of a pre-printed form. The Court finds that the typewritten language in the [Interest Adjustment Clause] is controlling.

There are various rules of construction that could have been applied and were argued, but the chancellor applied the right one.

He also had the benefit of hearing the testimony of the parties regarding their intention when the note was signed. We cannot say he was clearly wrong.

■ Finally, we consider the bank's cross-appeal. In an argument without the benefit of any legal authority, the bank asks that we reverse the chancellor's ruling that JoAnn Leonard was not liable for the interest in excess of ten percent per annum.[1] In such cases we often decline to rule on the question, affirming the decision of the lower court. That is our judgment in this case. *Ark. La. Gas Co.* v. *Hutcherson*, 287 Ark. 247, 697 S.W.2d 907 (1985).

Affirmed.

---

[1] This question was not specifically raised or mentioned in the pleadings or arguments of the parties. The chancellor mentioned in his written opinion that the bank could not collect from Mrs. Leonard over ten percent per annum. The opinion went on to state: "The practical effect of this the court will leave for further discussion at the suggestion of counsel, if desired." No objection was made by the bank to the court's consideration of this question. The decree, prepared by the bank, contained a finding that the bank could not collect from Mrs. Leonard over ten percent interest.