# STUDENT LOAN GUARANTEE FOUNDATION OF ARKANSAS, INC. *v.* BARNES, QUINN, FLAKE AND ANDERSON, INC.

CA 90-173                                              806 S.W.2d 628

Court of Appeals of Arkansas
Division I
Opinion delivered April 3, 1991

*Howell, Price, Trice, Basham & Hope*, by: *Robert J. Price*, for appellant.

*Friday, Eldredge & Clark*, by: *Michael G. Thompson* and *Mary L. Wiseman*, for appellee.

MELVIN MAYFIELD, Judge. Appellant, Student Loan Guarantee Foundation of Arkansas, Inc. (SLGFA), appeals an order of the Pulaski County Circuit Court holding it liable to appellee, Barnes, Quinn, Flake & Anderson, Inc. (Barnes, Quinn) for a $26,000.00 real estate commission. For reversal, appellant argues the circuit judge erred in holding (1) that the contract was ambiguous and (2) that the property purchased by the foundation constituted "office space."

On February 18, 1988, Ronald L. Nichoalds, executive director of SLGFA, a nonprofit corporation which guarantees loans for Arkansas students, entered into an agreement with Ramsay Ball, of Barnes, Quinn, which provided:

> The Student Loan Guarantee Foundation of Arkansas (SLGFA) wishes to engage Barnes, Quinn, Flake & Anderson, Inc. as its Exclusive Agent to assist the SLGFA in locating office space in the Little Rock area.

> The term of this Exclusive Agency agreement shall be for nine months from the date of your acceptance of the agreement. In consideration of our working exclusively through your firm, you will assist us in determining our criteria, survey the Little Rock market for alternative solutions, assist in evaluating the alternatives, and negoti-

ate on behalf of SLGFA. In the event that you have an agency relationship with the selling party, you will disclose this upon presentation of the particular property.

The fee to Barnes, Quinn, Flake & Anderson, Inc. is to be paid by the building or property owner. Furthermore, it is our understanding that there are no additional fees involved in any work that you may do for us unless mutually agreed to prior to the commencement of such work.

Your acceptance of this agreement should be indicated below.

On September 22, 1988, Barnes, Quinn filed suit in Pulaski County Circuit Court alleging that SLGFA had purchased the "Shack" property located in Little Rock at Third and Victory Streets, across the street from the foundation's current offices, for $260,000.00, without the use of the services of Barnes, Quinn. It was alleged that this violated the exclusive agency agreement (set out above) and that Barnes, Quinn was entitled to a commission of $26,000.00 based on the purchase price.

SLGFA answered, admitting that it had purchased the "Shack" property, but denying that Barnes, Quinn was entitled to a commission. SLGFA affirmatively alleged that the property purchased did not constitute "office space" within the meaning of the contract between the parties; and, in any event, that the contract specified that all fees due were to be paid by the seller of any property purchased.

At trial Dickson Flake, one of the owners of Barnes, Quinn, testified that he had been informed by an employee of the firm, Ramsay Ball, that SLGFA was in need of increased office space and that Ball intended to contact SLGFA to see if Barnes, Quinn could be of assistance. Flake said he subsequently reviewed a proposed letter contract which Ball had prepared, made some alterations to it, and approved the firm's commitment as set out in the letter. (At this point, Barnes, Quinn introduced into evidence the letter agreement which we quoted above.) Flake explained that pursuant to this agreement Barnes, Quinn surveyed existing buildings for purchase, and office sites for development, and presented a report to SLGFA. Also, he said, some potential properties were shown Mr. Nichoalds. Flake testified that his

firm was subsequently asked to locate immediate emergency space suitable for a computer facility, and the firm ultimately negotiated, on behalf of SLGFA, a one-year lease of office space in the First Federal Building for which Barnes, Quinn was paid a fee of approximately $2,000.00 by First Federal.

Flake testified that his firm was asked to find this interim office space in March of 1988. After this, in late April of 1988, he learned from Ramsay Ball that SLGFA was negotiating to purchase the "Shack" property, and he and Ball had a meeting with Nichoalds and Connie Meskimen, general counsel for SLGFA. Flake explained his firm's position that negotiations by SLGFA for the "Shack" property would come under the terms of the contract his firm had with SLGFA. He said he was instructed that Barnes, Quinn was not to contact Claude Carpenter, the owner of the "Shack" property; that Barnes, Quinn was to take no part in the negotiations; and that SLGFA's in-house counsel would be its sole representative in that transaction. Flake said he was presented with a copy of the signed letter agreement of February 18, 1988, and asked to sign the following clause typewritten on the bottom:

> The foregoing agreement is not intended to create an agency agreement between SLGFA and Barnes, et. al. for any real estate purchase by the SLGFA, or for any office space which the SLGFA may undertake to build during or subsequent to the expiration of this agreement.

According to Flake, he refused to execute this addendum to the original contract.

Flake acknowledged that the letter agreement of February 18, 1988, called for Barnes, Quinn to collect its commission from the seller of the property, but he said he explained to SLGFA's representatives that "if we were prevented by the Foundation from being involved and they were explicitly instructing us not to contact Mr. Carpenter, then we were—we would be unable to collect our fee from the seller." Flake said that his firm was entitled to a $26,000.00 commission based upon 10% of the purchase price of $260,000.00. He said this was the normal fee for undeveloped property. Flake also testified that the Little Rock Capitol Zoning District requires one parking space for each 300-400 square feet of office space; that office space without parking is

virtually valueless; and that, in his opinion, a parking lot acquired to complement or be used in connection with an office building constitutes office space.

Mr. Flake also testified that after SLGFA purchased the "Shack" property, it leased a building that was managed by Barnes, Quinn. This building was located a block and a half to two blocks west of the existing SLGFA offices. The "Shack" property was between SLGFA's existing offices and the building it leased through Barnes, Quinn. The lease was for five years and was entered into after SLGFA had purchased the "Shack" property. Barnes, Quinn was not acting for SLGFA in this transaction but was being paid to manage the building that was leased.

When this case was tried on September 28, 1989, Mr. Flake testified that the building leased to SLGFA was being used for office space. Also, at that time, the "Shack" property was being used as a parking lot, according to Flake's testimony. He also admitted that there was not an office building on that property on the day of trial, and he agreed that the property was not office space as it then existed. He did testify, however, that he was told by either Mr. Meskimen or Mr. Nichoalds that the "Shack" property was being acquired "for the purpose of their expansion." He was not told that they were going to build a building on it, but he inferred that they were going to use it for office space. He also admitted that SLGFA could hold the property for a while and then sell it, and that would be land speculation; but he said if the property is used to support an expansion of their existing office facilities "it is office space."

James E. Hathaway, Jr., a Little Rock real estate agent, was called as a witness by Barnes, Quinn. He testified that he was familiar with the "Shack" property and knew that someone had spent some money on the property, and it was now a fairly nice parking lot. He said in his opinion it was "office space" because it was being used in connection with SLGFA's office building.

Ronald L. Nichoalds testified that he was employed by SLGFA as its executive director. He said that they had needed office space badly and, without the approval of the board of directors, he executed the letter agreement of February 18, 1988. He said as a result of the agreement, SLGFA subsequently executed a one-year lease for offices in the First Federal Building.

In regard to the "Shack" property, he said when it was purchased it had an old restaurant building and two "concrete-like block buildings" on it; these were all torn down and they spent about $30,000.00 in turning the property into a parking lot. He said the property was originally purchased because it was an attractive investment property close to the state capitol complex; because it was an attractive building site; and because resale was an option. However, he said it was currently being used as a parking lot; that SLGFA had no long-term plan for the property except for parking; and that there have been no building plans drawn up for the site. Nichoalds said he told Ramsay Ball at the outset that he preferred to move out of the area where SLGFA was then located. Consequently, he said Ball did not show him anything in the area until SLGFA's directors decided to look for space to lease. He admitted that the agreement with Barnes, Quinn covered the acquisition of "office space," but he said the "Shack" property was not purchased for "office space" and was currently being used as a parking lot—not as "office space."

Based upon the above testimony, and other testimony which we need not summarize, the trial court found for Barnes, Quinn. The pivotal finding of fact made by the judge was that "the acquisition of the property across the street from its office site defeated the agreement of the parties on failure of the Student Loan Guarantee Foundation to secure the payment of a commission required by its undertaking with the Plaintiff." In *Manzo* v. *Park*, 220 Ark. 216, 247 S.W.2d 12 (1952), the court said it is a breach of contract for the owner to sell property he has granted another the exclusive right to sell, and this will render the owner liable for such damages as the other person may prove he sustained. *See also Earls* v. *Long*, 224 Ark. 57, 271 S.W.2d 784 (1954) (owner who wrongfully cancels the exclusive listing is liable for damages). The same principle would allow Barnes, Quinn to recover in the instant case if SLGFA's purchase of the "Shack" property breached the exclusive agency agreement between them. While SLGFA has not questioned the amount of the recovery allowed, it does question the right of Barnes, Quinn to recover in any amount.

It is SLGFA's contention that the purchase of the "Shack" property did not breach its contract with Barnes, Quinn because the "Shack" property was not "office space." SLGFA argues that

the letter agreement with appellee, Barnes, Quinn was not ambiguous, and the trial court erred in allowing parol evidence to explain or vary the meaning of the term "office space" used in the agreement. The appellant also argues that even if the term "office space" was ambiguous, the trial court's finding that the "Shack" property constituted "office space" ws clearly erroneous.

Prior to the taking of testimony, counsel for appellant made a motion in limine. During the course of the ensuing discussion the judge said to counsel for appellant:

> Well, let me say this. If you are saying that you don't want him amending the contract by parol evidence, then I would agree that . . . if it is a formal contract, you can't amend that by some sort of parol evidence. However, as I said, I think you can introduce parol evidence to, lack of a better term, ferret out ambiguity.

And the discussion finally concluded with these remarks by the judge:

> Well, for the purpose of the record here, I will deny his motion. As I say, the only thing I'm trying to do here is make sure that the record shows the purpose of the Court in denying his motion, and that is that I — to the extent that it would be introduced for the purpose of amending a formal contract, the Court is not going to receive it, or is not going to treat it in that fashion, but he will treat it with the idea that if it introduces — by its introduction it introduces to the Court an ambiguity into the contract, then the Court will consider it for substantial evidence, all right?

During the testimony of the first witness, counsel for appellant made several objections on the grounds that the questions by counsel for the appellee were attempts to vary or explain the written contract by parol evidence and eventually the court gave appellant's counsel a continuing objection to questions which might violate the parol evidence rule.

■ We agree with the appellant's contention that its agreement with the appellee was not ambiguous and that the trial court erred in allowing parol evidence to explain or vary the meaning of the term "office space" used in the agreement. As pertinent to this case, *Webster's Ninth New Collegiate Diction-*

*ary* (1983) defines the word "office" as a "place where a particular kind of business is transacted or a service is supplied," and "space" is defined as "an extent set apart or available." The *American Heritage Dictionary* (2d College ed. 1982) defines "office" as "a place in which business, clerical or professional activities are conducted," and "space" is defined as "an area provided for a particular purpose." *Black's Law Dictionary* (5th ed. 1979) defines "office" as "a place for the regular transaction of business or performance of a particular service." Obviously, a parking lot will not meet these dictionary definitions pertaining to "office space."

In *C & A Construction Company, Inc. v. Benning Construction Company*, 256 Ark. 621, 509 S.W.2d 302 (1974), the parties had entered into a written agreement which provided that the appellee would "receive $20,000 for supervision which will be added to the actual cost figure." The court set out the following general rules about the construction of contracts.

> When contracting parties express their intention in a written instrument in clear and unambiguous language, it is our duty to construe the written agreement according to the plain meaning of the language employed. . . . However, where the meaning of a written contract is ambiguous, parol evidence is admissible to explain the writing. . . . Ambiguities are both patent and latent. When, on its face, the reader can tell that something must be added to the written contract to determine the parties' intent, the ambiguity is patent; a latent ambiguity arises from undisclosed facts or uncertainty of the written instrument. . . . However, the initial determination of the existence of an ambiguity rests with the court and if ambiguity exists, then parol evidence is admissible and the meaning of the term becomes a question for the factfinder.

256 Ark.at 622 (citations omitted). The court held that the contract was unambiguous; that it provided a definite amount for supervision; and that the parol evidence rule would not allow oral evidence to change the written contract. The court said: "Had the appellee's president and owner intended, as he now contends was their verbal understanding, that his salary should be in addition to the $20,000 for supervision, the written contract could easily have

so reflected."

A similar situation exists in the present case. Here, we think the term "office space" is clear and unambiguous; therefore, it is our duty to construe the written agreement in this case "according to the plain meaning of the language employed." The written agreement provides that SLGFA wishes to engage Barnes, Quinn as its exclusive agent "to assist SLGFA in locating office space." This is the assignment that Barnes, Quinn accepted, and the truth of the matter is that Barnes, Quinn negotiated a five-year lease by SLGFA of office space in a building that Barnes, Quinn managed, which was located within two blocks of SLGFA's existing offices, and the "Shack" property is simply a parking lot between the buildings.

■ Because the written agreement in this case was unambiguous, the testimony of Mr. Flake and Mr. Hathaway, which was somewhat corroborated by Mr. Carpenter, that a parking lot used in connection with office space is itself "office space" violated the parol evidence rule. To allow such testimony presents the same problem addressed in *Arkansas Rock & Gravel Company v. Chris-T-Emulsion Company*, 259 Ark. 807, 536 S.W.2d 724 (1976), where the court said:

> The trouble is, this argument runs squarely into the parol evidence rule. That is a rule of substantive law, which prevents a party from proving a prior or contemporaneous oral agreement that contradicts the written contract. *Hoffman v. Late*, 222 Ark. 395, 260 S.W.2d 446 (1953). It is true that when the language of a contract is ambiguous, proof of oral negotiations is admissible to show that the language was intended to have "any particular meaning that the words will reasonably bear." *Kerr v. Walker*, 229 Ark. 1054, 321 S.W.2d 220 (1959). But the rule does not allow a party to prove by oral testimony that clear and unambiguous words were subjectively intended to have a meaning not fairly attributable to them. The remedy in that situation is a suit for reformation of the contract. Restatement, Contracts, § 230 (1932).

259 Ark. at 810. So, we think the opinion testimony that a parking lot used in connection with office space is itself office space should not have been considered by the trial judge under his ruling on

appellant's motion in limine and under his ruling which granted appellant's counsel a continuing objection to questions which might violate the parol evidence rule.

While the trial judge did not make an express finding on the issue, he apparently thought the term "office space" was ambiguous. However, to give effect to the testimony that a parking lot used in connection with office space is itself office space is wrong for another reason in addition to the violation of the parol evidence rule. That reason is demonstrated by the case of *Kerr* v. *Walker*, 229 Ark. 1054, 321 S.W.2d 220 (1959), where the Arkansas Supreme Court explained:

> It is true that prior negotiations between the parties are admissible to show that ambiguous language in the contract was intended to have any particular meaning that the words will reasonably bear, or, if that particular meaning cannot be assigned to the language, to show a mutual mistake that requires a reformation. . . . But such testimony must relate to an understanding that was common to both parties; it is not permissible to show the uncommunicated subjective interpretation that one party or the other placed upon the language of the agreement.

229 Ark. at 1057 (citations omitted). In the present case, we do not believe the evidence shows that SLGFA understood or agreed that a parking lot used in connection with office space was itself office space.

The appellee, however, relies upon the evidence that Mr. Flake was asked to execute an addendum to the original contract which would provide that the original agreement was not intended to create an agency agreement for any real estate purchase by SLGFA, or any office space it might undertake to build, during or subsequent to the expiration of the original agreement. Appellee argues that this shows that SLGFA "acknowledged that the 'Shack' property, whether used as a parking lot for offices or as a building site, fell under the contract." There are two problems with that argument. First, it does not negate the application of the parol evidence rule. In *Hoffman* v. *Late*, 222 Ark. 395, 260 S.W.2d 446 (1953), the court pointed out that "the practical justification for the rule lies in the stability that it gives to written contracts; for otherwise either party might avoid his

obligation by testifying that a contemporaneous oral agreement released him from the duties that he had simultaneously assumed in writing." The *Hoffman* case was relied upon by the court in the *C & A Construction Company* case, *supra*, in pointing out that verbal evidence "cannot" alter the terms of an unambiguous written agreement.

■ And in the second place, we do not agree that the attempt to get the appellee to execute the addendum to the original contract "acknowledged" that the purchase of the "Shack" property "fell under" the original contract. The addendum was drawn and presented to Barnes, Quinn after Mr. Nichoalds of SLGFA learned that Mr. Ball of Barnes, Quinn said they would expect a commission if SLGFA purchased the "Shack" property directly from Claude Carpenter. Also, there was evidence that SLGFA asked Carpenter to pay the fee to Barnes, Quinn, but again, this was after SLGFA representatives learned that Barnes, Quinn representatives were going to insist that it would be entitled to a commission if SLGFA purchased the "Shack" property directly. We believe that a clear preponderance of the evidence shows that both of these incidents were simply attempts to avoid a problem about a commission in the event SLGFA purchased the "Shack" property.

■ Moreover, we do not agree with the appellee's view of the effect of statements or inferences, supposedly made by representatives of the appellant, that the "Shack" property was being purchased for expansion or remodeling of SLGFA's existing office facilities. To hold that this evidence shows that the "Shack" property was "office space" would not only violate the parol evidence rule, but would also be clearly erroneous. SLGFA had a written agreement which clearly stated that any fee due Barnes, Quinn would be paid by the owner of any building or property that Barnes, Quinn located and SLGFA purchased for "office space." We do not believe this evidence shows that the "Shack" property purchased by SLGFA in the summer of 1988, which it made into a parking lot by the expenditure of approximately $30,000.00, and which was being used as a parking lot at the time this case was tried in the fall of 1989, was purchased for "office space" as that term was used in the agreement of the parties.

Reversed and dismissed.

DANIELSON, J., agrees.

COOPER, J., concurs.

JAMES R. COOPER, Judge, concurring. I agree with the majority opinion in holding that the term "office space" as used in the written agreement between the parties in this case is not ambiguous. I also agree that the majority opinion has correctly defined and applied that term to the issue presented by this appeal. It is not necessary, however, to speculate on what we would hold if the term were ambiguous. Therefore, I concur with the result reached by the majority opinion.

Although the issue is not presented by the parties, I question whether there was an enforceable contract in this case. An agreement to renew a lease at an annual rental to be agreed upon has been held to be too uncertain and indefinite to be enforced. *Phipps & Brown* v. *Storey*, 269 Ark. 886, 601 S.W.2d 249 (Ark. App.1980). In the present case, the appellee is made the exclusive agent to locate office space for the appellant. However, the appellant is not required to buy the property, and if it does, the appellee's fee is to be paid by the seller who is not a party to the agreement.