Edgar A. STACY, III, Peggy K. Stacy, and Stacy Lands, Inc. *v.* W. Hunter WILLIAMS, Jr., and Alba Williams

CA 91-457 834 S.W.2d 156

Court of Appeals of Arkansas
En Banc
Opinion delivered June 3, 1992

*Friday, Eldredge & Clark,* by: *Joe D. Bell,* for appellants.

*Ball & Barton,* by: *Whit Barton,* for appellees.

JOHN E. JENNINGS, Judge. Appellants appeal from a judgment of the Mississippi County Circuit Court which dismissed their claim for breach of contract and awarded appellees, on their counterclaim, the return of their $10,000.00 earnest money deposit. Appellants contend that the circuit judge erred in finding that appellees' ability to obtain financing to purchase appellants' property was a condition precedent to the enforcement of their contract. We find no error and affirm.

Appellants own a 588-acre farm in Mississippi County. On June 14, 1985, Hunter Williams, Jr., Alba Williams, and Hunter Williams, Sr. (now deceased), signed a contract to purchase

appellants' farm for $882,000.00. Specifically, the pre-printed contract provided:

> Seller covenants and agrees to sell and convey Property, with all improvements thereon, or cause it to be conveyed, by good and sufficient warranty deed, to Purchaser, or to such person or persons as Purchaser may designate; Purchaser, however, shall not be released from any of Purchaser's agreements and undertakings as set forth herein, unless otherwise stated; and Purchaser covenants and agrees to purchase and accept Property for the total price of *($882,000.00) Eight Hundred Eighty Two Thousand and no/100—Dollars*, upon terms as follows:

After this language, the following typed insertion was added by appellants' real estate agent, Kemp Whisenhunt:

> Buyers to pledge approximately 900 acres of land in Tallahatchie County in Mississippi together with lands herein described for loan to pay purchase price. 1985 crop rent of 1/4 cotton and 1/3 other crops to be transferred to buyer. Closing on or before August 1, 1985.

The contract also provided that appellees were to obtain possession of the property on January 1, 1986.

Initially, appellees encountered some problems in obtaining financing for the property because the farm had been leased to a third party until December 1987. Appellees sought financing from a number of different lending institutions, without any success. Equitable Life Assurance Society was the only lender appellees found that was interested in making the loan. The loan was never made, however, because Equitable ran out of farm mortgage money before the loan could be finalized. On September 15, 1985, Hunter Williams, Sr., became ill, and he died on October 10, 1985. Several months later, appellants sold the farm to their tenant, Koehler Blankenship, for $630,000.00. Appellants then sued appellees for breach of contract, seeking $252,000.00, which represented the difference between the $882,000.00 purchase price offered by appellees and the $630,000.00 paid by Mr. Blankenship. Appellees counterclaimed for the return of their earnest money deposit. The case was tried to the court sitting as the jury.

The court found that the agreement referred to the purchase price as $882,000.00, upon terms that appellees pledge approximately 900 acres of land in Mississippi, together with the subject lands, for a loan to pay the purchase price. The court also found that, before drafting the sale contract, appellants' agent, Kemp Whisenhunt, was aware that appellees could not purchase the farm without first obtaining a loan. The court concluded that appellees' ability to obtain a loan was a condition precedent to their performance of the contract and, since they used more than reasonable efforts to obtain a loan and were unable to do so, the contract terminated and was unenforceable.

Appellants argue on appeal that the trial court erred in holding that appellees' ability to obtain a loan to purchase the farm was a condition precedent to their duty to purchase the farm. Appellants contend that the parties' contract does not contain language which creates a condition precedent and does not allow for appellees to be released from the contract in the event they are unable to obtain a loan.

Whether a provision in a contract amounts to a condition precedent is generally dependent on what the parties intended, as adduced from the contract itself. *McMinn* v. *Holley*, 86 Idaho 186, 384 P.2d 229, 231 (1963). When the terms of a written contract are ambiguous and susceptible to more than one interpretation, extrinsic evidence is permitted to establish the intent of the parties and the meaning of the contract then becomes a question of fact. *Floyd* v. *Otter Creek Homeowners Ass'n*, 23 Ark. App. 31, 35, 742 S.W.2d 120, 122-23 (1988). *See also Marlatt* v. *LaGrange*, 145 Colo. 50, 52, 357 P.2d 927, 928 (1960); *Hawkins & Chamberlain* v. *Mathews*, 242 Ky. 732, 47 S.W.2d 547, 548 (Ct. App. 1932); and *Lopez* v. *Broussard*, 308 So.2d 837, 840-41 (La. Ct. App. 1975). Furthermore, evidence of a parol agreement that a written agreement is being delivered conditionally constitutes an exception to the parol evidence rule. *Bradbury* v. *Giordano*, 10 N.J. Super. 414, 76 A.2d 815, 817 (1950); *see also VJK Prods, Inc.* v. *Friedman Meyer Prod., Inc.*, 565 F. Supp. 916, 919 (S.D. N.Y. 1983).

Appellee Hunter Williams, Jr., testified that appellants' broker, Kemp Whisenhunt, knew that appellees did not have sufficient cash to pay for the farm unless they obtained a loan. Mr.

Hunter testified that this fact was made perfectly clear to Mr. Whisenhunt. Additionally, on July 3, 1985, Hunter Williams, Jr., wrote to appellant Edgar Stacy announcing appellees' intent to rescind the contract for several reasons. One such reason provided:

> There was a mutual mistake between your agent, Kemp Whisenhunt, and my family as to the market value of farm land that my family owns in Tallahassee County, Mississippi. Your agent and my family were of the opinion that the market value of this land was between $900.00 and $1,000.00 an acre. In actuality, the land only enjoys a present market value of $600.00 per acre. The basis of any offer to purchase your land was to finance the purchase by selling the Mississippi land. In fact, an exchange of property along with the cash difference between the market value of the properties was being negotiated to avoid any payment of capital gains taxes.

On July 16, 1985, Joe Bell, attorney for appellants, responded to this letter, stating in part:

> The offer is not conditioned on the Mississippi land having a value of $900 to $1,000 per acre. Instead, that land, along with the Stacy farm, was to be used as collateral for a loan to your family to purchase the Stacy farm. Your position on this issue is untenable, and any further delay on your part to immediately seek such a loan, and close the sale with the Stacys, will be treated as a breach of your agreement to pay the Stacys the full purchase price.

It can be inferred from Mr. Bell's letter that appellants were aware that it would be necessary for appellees to obtain a loan in order to purchase the property. There is no testimony by appellants or their witnesses which disputes appellees' contention that their success in obtaining a loan was a condition of the agreement.

When two provisions in a contract are contradictory, typewritten provisions prevail over printed ones. *Leonard* v. *Merchants and Farmers Bank*, 290 Ark. 571, 574, 720 S.W.2d 908, 910 (1986); *McKinnon* v. *Southern Farm Bureau Casualty*

*Ins. Co.*, 232 Ark. 282, 285-86, 335 S.W.2d 709, 711 (1960). The typed insertion contained in the parties' agreement "buyers to pledge approximately 900 acres of land in Tallahatchie County in Mississippi together with lands herein described for loan to pay purchase price. . .," clearly created an ambiguity in the contract, and the intent of the parties could not be discerned from the four corners of the agreement. The circuit court, therefore, could properly consider evidence of the parties' intent in construing the language of the contract.

██ The findings of fact of a circuit court sitting as a jury will not be reversed on appeal unless clearly against a preponderance of the evidence, and in making that determination, we give due regard to the superior opportunity of the trial court to judge the credibility of the witnesses and the weight to be given their testimony. *Bass* v. *Service Supply Co.*, 25 Ark. App. 273, 276, 757 S.W.2d 189, 190 (1988); Ark. R. Civ. P. 52(a). We cannot say that the trial court's holding that appellees' ability to obtain financing was a condition precedent to enforcement of the contract is clearly against the preponderance of the evidence.

██ Appellants point out that, at the time the contract was drafted, appellee Hunter Williams, Jr., was a newly-licensed first-year attorney and that, if appellees had intended to make their obtaining a loan a condition precedent to the contract, they could have clearly so provided. While this is true, it does not render the language in the agreement unambiguous. The fact that a clause fails to employ the usual words denoting a condition such as "subject to" or "if," is not controlling in determining whether a condition precedent was created. Restatement (Second) of Contracts § 226, Comment a (1981). The contract was drafted by appellants' broker, and therefore, if the language is unclear, it should be construed strictly against appellants. *See Elcare, Inc.* v. *Gocio*, 267 Ark. 605, 608-09, 593 S.W.2d 159, 161 (1980); *Bradbury* v. *Giordano*, 10 N.J. Super. 414, 418, 76 A.2d at 817; *Hawkins & Chamberlain* v. *Mathews*, 242 Ky. 732, 735, 47 S.W.2d at 548.

Furthermore, courts from other jurisdictions have construed similar language, equally unclear, to create conditions precedent. In *Hawkins & Chamberlain* v. *Mathews*, 242 Ky. 732, 733-34, 47 S.W.2d at 547, the following language was found to create a

condition that had to be met before the contract could be enforced: "[A]t the agreed price of Nine Thousand ($9,000.) Dollars, to be paid as follows: At least $1500.00 plus an amount of not less than $6,000 obtained on loan in a building association secured by a first mortgage, to be paid in cash. . . ." In *Bradbury* v. *Giordano*, 10 N.J. Super. 414, 416, 76 A.2d at 816, the appellant, Mr. Giordano, agreed to sell the appellee property for $12,500.00. The appellee agreed to satisfy the purchase price in the following manner:

| "On execution of this agreement for which this is also a receipt | $1,000.00 |
| On delivery of deed, cash | $ |
| By assuming the mortgage at present a lien on the premises, and paying the same according to the terms thereof | $9,600.00 |
| On Bond and Mortgage * * * | $ |
| The purchaser agrees to assume an F.H.A. mortgage now existing on these premises in the amount of $9600.00, and *the purchaser agrees to apply and secure a secondary GI mortgage in the amount of $1,900.* (Italics mine.) | 1,900.00 |
| | 12,500.00" |

In addressing this language, the court stated:

The language we here deal with is the language of the defendants and should be construed strictly against them. It does not require a strict construction to reach the result that both vendor and vendee dealt with respect to an assumed condition to arise in the future and that the performance of the agreement by each of the parties was contingent and conditioned upon the contemplated event arising.

10 N.J. Super. at 418, 76 A.2d at 817. The court in *Marlatt* v. *LaGrange*, 145 Colo. 50, 52-53, 357 P.2d at 928, found the language " '$2,000.00 in cash including the above deposit on or before ten days from date; Obtained maximum loan and balance to be carried on 2nd Deed of Trust by Seller. . .' " to be vague

and indefinite and, therefore, held that the trial court could receive parol evidence to determine the parties' intentions. And in *Lopez* v. *Broussard*, 308 So.2d at 839, the court found that a contract provision which stated " '16.000-I.S.L.' " meant the remaining $16,000 purchase price was to be paid from the proceeds of a loan obtained from Iberia Savings & Loan Association and that the sale was conditioned on Ms. Broussard obtaining a loan. 308 So.2d at 839-41.

Appellants cite *Christy* v. *Pilkington*, 224 Ark. 407, 273 S.W.2d 533 (1954), and *Ingham Lumber Co.* v. *Ingersoll*, 93 Ark. 447, 125 S.W. 139 (1910), for the proposition that financial inability to pay does not discharge an unqualified contractual duty to perform a contract. In *Christy* v. *Pilkington*, the Christys executed a valid written contract by which they agreed to buy an apartment house from Mrs. Pilkington for $30,000.00. When the time came to pay, the Christys were unable to do so, and Mrs. Pilkington sued for specific performance. In affirming the chancery court's decree in favor of Mrs. Pilkington, Justice George Rose Smith wrote:

> Proof of this kind does not establish the type of impossibility that constitutes a defense. There is a familiar distinction between objective impossibility, which amounts to saying, "The thing cannot be done," and subjective impossibility—"I cannot do it." Rest., Contracts, § 455; Williston on Contracts, § 1932. The latter, which is well illustrated by a promisor's financial inability to pay, does not discharge the contractual duty and is therefore not a bar to a decree for specific performance.

224 Ark. at 407, 273 S.W.2d at 533. In *Christy*, there was no evidence the duty to perform was conditional. In the case at bar, however, there is evidence from which the court could find that appellees' duty to perform was conditioned on obtaining the necessary loan.

Likewise, in *Ingham Lumber Co.* v. *Ingersoll*, the appellant sought to be released from a contract because the appellant "could not get money into the country with which to pay for the work." The supreme court responded:

> But the written contract did not provide for a release of the defendant from liability upon such a contingency. The

rights of the parties must be measured by the contract which they themselves made. A contract is not invalid, nor is the obligor therein in any manner discharged from its binding effect, because it turns out to be difficult or burdensome to perform. A valid contract cannot be abrogated or modified unless both parties assent thereto; and if one of the parties manifests in unequivocal language his intention not to perform the contract unless it is modified, he breaches the contract. He may not be compelled to perform the undertaking but he cannot, on account of the hardship of the undertaking, relieve himself from the liability incurred by the contract.

93 Ark. at 452, 125 S.W. at 142. The court, quoting from *Johnson v. Bryant*, 61 Ark. 312, 315, 32 S.W. 1081, 1089 (1895), went on to state: "Inconvenience or the cost of compliance, though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing that is possible and lawful." *Ingham Lumber Co.* v. *Ingersoll*, 93 Ark. at 452, 125 S.W. at 142. The issue in the case at bar, however, is not impossibility; the issue is whether the appellees' duty to perform was made conditional under the terms of the parties' agreement.

 Appellants further argue that appellees and their agents unreasonably delayed in attempting to obtain the necessary loan, and therefore, did not exercise good faith. *See Betnar* v. *Rose*, 259 Ark. 820, 826-27, 536 S.W.2d 719, 723 (1976), which held that, in the absence of specific provisions in a contract, the buyers have the duty to make reasonable efforts and to accept reasonable terms in procuring a loan. Here, the circuit judge found the contrary to be true. In fact, he held that appellees not only made reasonable efforts, but made extensive efforts, to obtain a loan within a reasonable time and further noted that they went beyond their obligation by pledging an additional 120 acres of land in attempting to obtain the loan.

The evidence demonstrated that the agreement was signed on June 14, 1985; however, appellees were not notified that the problem regarding the existing lease of the farm had been resolved until a month later. Burl Calhoon, appraiser for Equitable Farm Mortgage Department, testified that he could not have

made the loan if there were any outstanding leases. Mr. Calhoon also testified that he told appellants' agent, Kemp Whisenhunt, at a meeting on June 25, that he would need a legal description, because one was not attached to the contract. On August 5, 1985, however, he still had not received the description from Mr. Whisenhunt, and he had to go to the office of appellees' attorney in order to get it from the abstracts. He also testified that the appellees were prompt and cooperative in getting him everything he needed to process the loan.

Malcomb Greenway, appellee Hunter Williams, Jr.'s great uncle, acted as appellees' agent in obtaining a loan. He testified that he had been arranging farm loans for over thirty-five years and that he contacted seven different lending institutions regarding making the loan. He stated that Equitable was the only lender who showed any interest.

Appellants also argue that appellees failed to use reasonable efforts by not following through on appellants' offer to finance a portion of appellees' purchase. The terms of this offer are very vague. Appellants introduced a letter into evidence, dated September 17, 1985, from their attorney, Joe Bell, to appellees' attorney, Graham Sudbury, informing appellees that appellants were willing to finance a portion of the purchase price. No other details were given. The letter further provided:

> This proposal needs to be acted on this week, as the Stacys will offer the land to other buyers, because of the Williams' failure to close. If the Williams desire to pursue the matter further, they should get in touch before September 20, 1985, since the farm will be offered for sale next week.

Graham Sudbury testified that he had an earlier conversation with Joe Bell in September in which Bell stated that appellants would be willing to sell the property for $750,000.00, with a four-hour time limit. Sudbury testified that he interpreted this offer to mean that appellees had four hours to come up with $750,000.00, which he felt was ridiculous. Hunter Williams, Jr., testified that he first saw Bell's letter on September 20th and by that time, his father, one of the buyers, was unconscious and, under the circumstances, he did not know what else he could do.

Whether the efforts of the appellees in the case at bar were reasonable was a question for the trier of fact. *See Betnar* v. *Rose*, 259 Ark. at 827, 536 S.W.2d at 723. Based on the evidence before the circuit judge, we cannot say his holding is clearly against the preponderance of the evidence.

Affirmed.

ROGERS and COOPER, JJ., dissent.

JUDITH ROGERS, Judge, dissenting. I respectfully dissent from the decision of the majority because the language employed in the purchase agreement did not create a condition precedent. The majority affirmed the chancellor's holding that a condition precedent existed in the contract which conditioned the appellees' obligation to purchase appellants' farm on their ability to obtain financing. This interpretation is clearly contrary to the terms of the agreement.

We have held that, when contracting parties express their intention in a written instrument in clear and unambiguous language, it is our duty to construe the written agreement according to the plain meaning of the language employed. *Student Loan Guar. Found.* v. *Barnes*, 34 Ark. App. 139, 147, 806 S.W.2d 628, 632 (1991). In construing a contract, the intention of the parties is to be gathered, not from some particular phrase, but from the whole context of the agreement. *Arkansas Power & Light Co.* v. *Murry*, 231 Ark. 559, 563, 331 S.W.2d 98, 100 (1960). In *North* v. *Philliber*, 269 Ark. 403, 602 S.W.2d 643 (1980), the supreme court stated:

> It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered not from particular words and phrases but from the whole context of the agreement. In fact, it may be said to be a settled rule in the construction of contracts that the interpretation must be upon the entire instrument and not merely on disjointed or particular parts of it. The whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated clause. Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any

reasonable purpose thereof which can be gathered from the whole instrument. The contract must be viewed from beginning to end, and all its terms must pass in review, for one clause may modify, limit, or illuminate the other. Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized, if that course is reasonably possible. Each of its provisions must be considered in connection with the others, and, if possible, effect must be given to all.

269 Ark. at 406-07, 602 S.W.2d at 645 (quoting *Fowler* v. *Unionaid Life Ins. Co.*, 180 Ark. 140, 144-45, 20 S.W.2d 611, 613 (1929)).

The contract does not contain any language creating a condition precedent. The contract clearly provides that the purchaser "shall not be released from any of [p]urchaser's agreements and undertakings as set forth herein, unless otherwise stated. . . ." No provision for release of the appellees in the event they are unable to obtain financing is included in the contract. In fact, the contract specifically provides for the only conditions under which appellees can be released:

> If the title is not good and cannot be made good within a reasonable time after written notice has been given that the title is defective, specifically pointing out the defects, then the above earnest money shall be returned to Purchaser and the usual commission shall be paid to the undersigned Agent by Seller. If the title is good and Purchaser shall fail to pay for Property as specified herein, Seller shall have the right to elect to declare this contract cancelled, and upon such election, the earnest money shall be retained by and divided equally between Seller and Agent, as liquidated damages and commission respectively, but in no event shall Agent's share exceed the regular commission. The right given Seller to make the above election shall not be Seller's exclusive remedy, and either party shall have the right to elect to affirm this contract and enforce its specific performance or recover full damages for its breach. . . .

For the majority to find the contract is conditional renders this language meaningless. A construction which neutralizes any provision of the contract cannot be adopted if the contract can be construed in a way which gives effect to all its provisions. *Lindell Square Ltd. Partnership* v. *Savers Fed. Sav. and Loan Ass'n*, 27 Ark. App. 66, 71, 766 S.W.2d 41, 44 (1989).

The majority has affirmed the chancellor's finding that the following typed language the parties inserted in the printed agreement created a condition precedent:

> Buyers to pledge approximately 900 acres of land in Tallahatchie County in Mississippi together with lands herein described for loan to pay purchase price. 1985 crop rent of 1/4 cotton and 1/3 other crops to be transferred to buyer. Closing on or before August 1, 1985.

It is clear that the parties never intended by this language to condition the sale on appellees' obtaining financing. Read as a whole, this provision speaks not only of appellees' pledging certain lands as collateral for the purchase, but also of appellees' receiving the benefit of crop rents on the land to be purchased. According to the plain language of the contract then, the obvious construction of the language inserted in the agreement is that it was simply intended to explain the terms of financing the purchase.

> Contracts for the sale and purchase of land frequently contain provisions referring to financing arrangements proposed to be made by the purchaser. Determination of the force and effect of such provisions involves the application of the usual rules for construction of contracts for the purchase and sale of land.
>
> Whether or not a provision in a contract for the sale of realty referring to the purchaser's uncompleted arrangement for financing the balance of the purchase price creates a condition precedent to performance of the contract depends primarily upon the intention of the parties as deduced from the language of the contract, the surrounding circumstances at the time the contract was executed, and the purpose sought to be accomplished by the contract.

77 Am. Jur. 2d *Vendor and Purchaser*, § 66 (1975). Moreover,

the court's finding that the parties intended for a condition precedent to be included in the contract is clearly against the preponderance of the evidence.

Appellee Hunter Williams, Jr., testified at trial that it was made perfectly clear to appellants' broker that appellees had to obtain a loan in order to purchase the farm and, after these discussions, the purchase agreement was prepared. If appellees had intended that such a condition be a term of the contract, they could have clearly so provided. Nevertheless, appellees signed the agreement without such a condition being included. Appellee is a lawyer and presumably knows that a written contract merges and thereby extinguishes all prior and contemporaneous negotiations, understandings, and verbal agreements of the same subject matter. *See Farmers Cooperative Ass'n, Inc.* v. *Garrison*, 248 Ark. 948, 952, 454 S.W.2d 644, 646 (1970).

Furthermore, appellees' actions negate any inference that the purchase agreement was conditional. After the agreement was executed, appellees discovered there was an outstanding lease on the property and attempted to rescind the contract. In his letter notifying appellants of the intended rescission, appellee Hunter Williams, Jr., discussed his understanding of the parties' agreement. He stated:

> 3. There was a mutual mistake between your agent, Kemp Whisenhunt, and my family as to the market value of farm land that my family owns in Tallahassee County, Mississippi. Your agent and my family were of the opinion that the market value of this land was between $900.00 and $1,000.00 an acre. In actuality, the land only enjoys a present market value of $600.00 per acre. The basis of any offer to purchase your land was to finance the purchase by selling the Mississippi land. In fact, an exchange of property along with the cash difference between the market value of the properties was being negotiated to avoid any payment of capital gains taxes.

> 4. In light of the present market value of the Mississippi land, and the age of my parents, it is highly doubtful that any lending institution would finance this purchase.

Although in his letter he discussed the value of the collateral to be used in obtaining a loan, he never stated that appellees' performance was conditioned on obtaining a loan.

In response to this letter, appellants' attorney replied:

> This firm, along with Oscar Fendler represents Ed and Peggy Stacy in connection with your family's June 14, 1985 agreement to buy a 588 acre farm from the Stacys. Your July 3, 1985 letter to Ed Stacy, stating your family's unilateral attempt to rescind the agreement has been referred to Mr. Fendler and me for answer. It is Ed and Peggy Stacys' position that a binding contract to purchase has been consummated and they are unwilling to rescind that contract.

The majority infers from this statement that appellants were aware appellees needed financing in order to purchase the property. While this may be a correct inference, it is not evidence that the parties agreed that obtaining this financing would be condition precedent to the contract.

Furthermore, on being notified that the problems regarding the outstanding lease had been cleared, appellee responded:

> I am in receipt of your letter of July 16, 1985. My family welcomes the news that Koehler Blankenship has agreed to vacate the Stacy farm prior to January 1, 1986. With that news, most of the problems my family had with consummating this land purchase have been remedied.

> My family has always wanted to purchase the Stacy farm and have been working toward that goal since July 3, 1985. An appraisal of our Mississippi land was conducted and the value attached to the cultivable acres was between $900.00 and $1,000.00 an acre.

Again, no mention is made of any existing condition which would relieve appellees from performing under the contract. Even the letter from appellees' attorney, Graham Sudbury, advising appellants that appellees had been unable to obtain financing, does not state that the appellees were released from their obligation to purchase the farm because they were unable to obtain financing. In fact, it was not until appellees filed their counterclaim, almost a

year after appellants had filed suit, that they first argued the agreement terminated because of the failure of a condition precedent.

Although it may have been impossible for appellees to purchase the farm when they were unable to obtain the necessary loan, that impossibility does not relieve them of the obligation to do so.

> Subjective impossibility, except in cases where it is also objective, does not excuse non-performance of a contract. Insolvency or inability to obtain necessary funds is a perfect illustration of subjective impossibility. It absolutely precludes making a payment contracted for; but unless wrongfully caused by the creditor, insolvency is no excuse. And any impossibility arising from a promisor's inadequate pecuniary resources will very rarely afford an excuse.

18 Samuel Williston, *Contracts*, § 1932 at 10-11 (3d ed. 1978). *See also Christy* v. *Pilkington*, 224 Ark. 407, 273 S.W.2d 533 (1954); *Ingham Lumber Co.* v. *Ingersoll*, 93 Ark. 447, 452, 125 S.W. 139, 142 (1910).

It is the duty of the court to construe a contract according to its unambiguous language without enlarging or expanding its terms. *Christmas* v. *Raley*, 260 Ark. 150, 153, 539 S.W.2d 405, 407 (1976). It is not within the province of the court to add conditions in order to relieve a party from the harshness of the binding effect of a contract. *Accord Rector-Phillips-Morse, Inc.* v. *Vroman*, 253 Ark. 750, 753, 489 S.W.2d 1, 4 (1973). Here, there is no provision in the contract making appellees' obligation to perform the contract contingent upon their ability to obtain a loan. In the absence of such a provision in the agreement, a condition cannot be read into the contract by the court. *See Baugh* v. *Johnson*, 6 Ark. App. 308, 315, 641 S.W.2d 730, 734 (1982). For the majority to look outside the four corners of this purchase agreement and add additional terms in order to allow appellees to escape the binding effect of their agreement renders thousands of contracts uncertain and will throw them into the courts.

In sum, I do not regard the provision as being ambiguous,

and I think it clear that this provision was included as merely a reference to the proposed financing arrangements but not as a condition precedent such that appellees' inability to obtain a loan would relieve them of their obligations under the contract of sale. There is no language in this contract which states that the provision was intended as a condition precedent, and while it can be said that it was known that appellees needed a loan to purchase the property, the evidence introduced does not support a finding that the purchase was conditioned on their obtaining a loan. I think it an unwise course to expand the terms of the contract to create a condition precedent, thereby allowing the appellees to escape the binding effect of their agreement to purchase the property. Contracts should not be so easily discarded, and I object to taking such wide latitude in interpreting contracts so as to alter the plain meaning of the language employed. The import of the decision by the majority goes far beyond this particular case. It places in jeopardy the custom and usage in the commercial world of offer and acceptance in real estate transactions. I would therefore reverse the decision of the chancellor but remand the case to him for a determination of appellants' damages.

Judge Cooper joins in this dissenting opinion.